



FILED
12/9/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PJJ

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

DISTRICT OF ILLINOIS EASTERN DIVISION


HELEN ALLEN,

   Plaintiff,

v.

                      Case No. 1:25-cv-10438

                      Hon. Virginia M. Kendall

CASS CASPER and

 DISPARTI LAW GROUP,

   Defendants.


## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Helen Allen, appearing pro se, respectfully submits this full-length, case-law

supported Opposition to Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

Defendant's motion must be denied because it misstates the governing law, raises factual

disputes barred at the pleading stage, and ignores Plaintiff's detailed allegations of

attorney malpractice, fiduciary breach, interference, and emotional distress.

## I. LEGAL STANDARD

Rule 12(b)(6) motion tests legal sufficiency, not the merits. A complaint survives dismissal when it states a plausible claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Courts must accept all well-pleaded allegations as true and draw all inferences for Plaintiff. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Factual disputes cannot be resolved on a Rule 12(b)(6) motion. Geinosky v. Chicago, 675 F.3d 743 (7th Cir. 2012).

Defendant's Motion violates each principle by relying heavily on factual rebuttals.

## II. PLAINTIFF HAS STATED A VALID CLAIM FOR LEGAL MALPRACTICE

Under Illinois law, Plaintiff must plead duty, breach, causation, and damages. Stevens v. McGuireWoods LLP, 2015 IL 118652. Plaintiff alleges Defendant:

• filed an unauthorized and defective amended complaint;

• removed key claims including IIED, battery, assault, and §1981 discrimination;

• misstated Plaintiff's job classification;

• failed to correct errors despite immediate notice;

• abandoned discovery and refused to depose essential witnesses;

• withdrew after harming Plaintiff's procedural posture.

Illinois recognizes causation where attorney negligence destroys litigation posture or eliminates viable claims. Tri-G, Inc. v. Burke, 222 Ill. 2d 218 (2006). Defendant's removal of claims and failure to conduct discovery foreseeably caused Plaintiff to lose essential arguments and factual support.

## III. DEFENDANT'S "LACK OF MERIT" ARGUMENT FAILS

Defendant argues the underlying Ford claims were meritless. This is irrelevant under Rule 12 and factually wrong.

Plaintiff was the only Ford plaintiff with an EEOC Determination Letter, which courts recognize as strong evidence of merit. Smith v. City of Chicago, 457 F.3d 643 (7th Cir. 2006). (See Exhibit 6)

Before Defendant's involvement, none of Plaintiff's claims were dismissed. Defendant alone removed her strongest claims.

## IV. SUMMARY JUDGMENT DOES NOT BREAK CAUSATION

Illinois courts reject the argument that "summary judgment defeats causation." Attorney negligence that undermines the ability to survive summary judgment is actionable. Johnson v. Halloran, 312 Ill. App. 3d 695 (1st Dist. 2000).

Plaintiff alleges Defendant's errors caused:

• missing facts in the amended complaint;

• lack of essential evidence due to no discovery;

• removal of key claims and witnesses.

Summary judgment was not based on the merits—it was based on a defective record created by Defendant.

## V. STATUTE OF LIMITATIONS DOES NOT BAR THE CLAIM

### A. Two-Year Discovery Rule

A claim accrues only when the plaintiff knows both injury and wrongful cause. Hermitage Corp. v. Contractors Adjustment Co., 166 Ill. 2d 72 (1995).

Plaintiff did not discover Defendant's hidden errors—removed claims, void lien, concealment—until after the appellate dismissal in 2024.

Filed in 2025 → timely.

### B. Six-Year Statute of Repose

735 ILCS 5/13-214.3(c) gives six years from last negligent act.

Defendant last acted in 2022. Plaintiff filed in 2025—only three years later.

## VI. FIDUCIARY DUTY CLAIM IS DISTINCT AND VALID

Illinois allows separate fiduciary duty claims where conduct involves dishonesty, concealment, or self-dealing. In re Estate of Halas, 209 Ill. App. 3d 333 (1991).

Plaintiff alleges:

• concealment of disciplinary issues;

• self-interested attempt to attach himself to Plaintiff's settlement;

• misuse of a void lien;

• loyalty divided between Plaintiff and Ford's counsel.

These allegations go beyond negligence. Count II is properly pled.

VII. TORTIOUS INTERFERENCE IS SUFFICIENTLY PLED

Illinois elements come from Anderson v. Vanden Dorpel, 172 Ill. 2d 399 (1996).

Plaintiff had:

• active settlement negotiations.

• draft settlement agreements;

• evidence Ford wrote Casper into the settlement.

Defendant interfered via an unfiled, void lien and actions designed to secure payment for himself at Plaintiff's expense.

## VIII. IIED CLAIM IS SUFFICIENT UNDER FEDERAL PLEADING STANDARDS

Illinois requires intentional or reckless conduct causing severe emotional distress. Knierim v. Izzo, 22 Ill. 2d 73 (1961). No medical evidence is required at pleading stage. Honaker v. Smith, 256 F.3d 477 (7th Cir. 2001).

Plaintiff alleges:

• severe anxiety;

• emotional distress upon discovering claims were removed;

• distress from being forced into trial unprepared.

This satisfies Rule 12.

## IX. DEFENDANT RAISES IMPROPER FACTUAL DISPUTES

Repeated factual arguments—"claims lacked merit," "no prejudice," "summary judgment was inevitable"—are improper. Tamayo v. Blagojevich, 526 F.3d 1074 (7th Cir. 2008).

First, Defendant's suggestion that the removal of Plaintiff's core claims was a strategic or legally compelled decision is refuted by the record. Plaintiff's claims—including §1981 race discrimination, IIED, battery, assault, hostile work environment, and retaliation—had survived years of litigation and multiple rounds of motions to dismiss before Defendant unilaterally stripped them without consent. An attorney may not unilaterally eliminate viable causes of action that materially alter a client's rights, exposure, remedies, or litigation posture. Such conduct constitutes malpractice and a breach of

fiduciary duty as a matter of law because it deprives the client of claims the attorney had no authority to waive.

Second, Defendant's motion ignores that Plaintiff has adequately pled damages. Damages flowing from legal malpractice include the loss of viable federal claims, loss of §1981 uncapped compensatory and punitive damages, loss of settlement value, and the loss of discovery opportunities needed to develop the case. Plaintiff's expert report (Exhibit 7) quantifies the magnitude of these damages, and under Rule 12, the Court must accept these allegations as true. Defendant's attempt to claim that Plaintiff cannot show damages is both premature and contrary to governing precedent.

Third, Defendant's argument that the lien and settlement-interference allegations are irrelevant is legally incorrect. Defendant's insertion of himself into Plaintiff's settlement negotiations—after being terminated for cause and without any valid lien—shows divided loyalty, self-dealing, and intentional interference with Plaintiff's financial recovery. Such conduct is independently actionable and directly supports Plaintiff's fiduciary duty and tortious interference claims. These facts are properly considered at the

pleading stage because they demonstrate a pattern of misconduct, motive, and intentional disruption of Plaintiff's legal rights.

Finally, to the extent Defendant argues that Plaintiff's interference, fiduciary duty, and emotional distress claims are conclusory, the detailed factual allegations in the Complaint defeat this contention. Plaintiff identifies specific acts, dates, communications, removed

claims, altered pleadings, refusal to correct acknowledged errors, interference with settlement, and conduct causing severe emotional harm. These factual allegations meet and exceed federal pleading standards under Twombly and Iqbal, and they establish each element of the respective claims. Defendant's disagreement with the facts does not convert them into conclusory allegations; it merely underscores that dismissal is improper.

Defendants' Motion to Dismiss fails for multiple, independently sufficient reasons. First, Plaintiff has pled every required element of legal malpractice, and the Complaint is supported by detailed factual allegations—including unauthorized claim removal, refusal to correct admitted errors, abandoned discovery, and direct interference with settlement— that must be accepted as true at this stage. Second, Defendants improperly rely on factual disputes regarding the strength of the underlying claims, merits of the Ford litigation, and Plaintiff's alleged ability to prove damages. Such arguments are barred at the Rule 12(b)(6) stage under Twombly, Iqbal, and Seventh Circuit precedent. Third, Plaintiff has adequately pled causation by showing that Defendant's conduct destroyed her litigation posture, eliminated her strongest claims, and prevented the development of critical evidence. Fourth, the statute of limitations is no bar because Plaintiff filed within both the two-year discovery rule and the six-year statute of repose. Fifth, Plaintiff's fiduciary duty, interference, and IIED claims are supported by specific, concrete facts showing

concealment, self-interested actions, and severe emotional harm. For these reasons, Defendants' motion is legally and factually unsustainable and must be denied.

Additionally, Illinois courts have held that an attorney may not unilaterally amend pleadings, eliminate viable claims, or make strategic litigation decisions without the client's informed consent. In Krause v. Meyers, 200 Ill. App. 3d 782 (1990), the court recognized that unauthorized alteration of a client's claims constitutes actionable malpractice because it deprives the client of the right to control the objectives of the representation. Defendant's removal of Plaintiff's §1981, IIED, battery, assault, and hostile-work-environment claims—without Plaintiff's permission—falls squarely within the type of unauthorized conduct identified in Krause and independently supports liability.

Illinois law also confirms that an attorney's failure to conduct meaningful discovery or failure to secure critical factual development constitutes negligence. In Governmental Interinsurance Exchange v. Judge, 221 Ill. App. 3d 586 (1991), the court held that failing to pursue available discovery or develop the evidentiary record can establish breach of

duty and proximate cause in a malpractice action. Here, Defendant refused to depose essential witnesses, abandoned discovery, and created a deficient record that led directly to the adverse judgment against Plaintiff. Under Judge, these allegations more than sufficiently plead malpractice and causation.

XI. SUMMARY OF WHY DEFENDANTS' MOTION TO DISMISS FAILS

X. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny the Motion to

Dismiss in its entirety.


Respectfully submitted

/s/Helen Allen

9530 Pineview Road

Suffolk, Va 23437

202-270-2338

wintresssssa@gmail.com

CERTIFICATE OF SERVICE

I certify that on today's date, I filed the foregoing Opposition to Defendants' Motion to Dismiss via the Court's CM/ECF electronic filing system, which automatically serves all counsel of record.

/s/ Helen Allen

Pro Se Plaintiff

| Exhibit Number | Description |
| --- | --- |
| 1 | Pro Se Amended Complaint (March 22, 2021) |
| 2 | Casper's Amended Complaint (April 29, 2022) |
| 3 | Side-by-Side Removed Claims Comparison |
| 4 | April 29–May 1, 2022 Texts/Emails with Defendant |
| 5 | Judge Rowland's Statement on Frivolous Amendment |
| 6 | EEOC Determination Letter |
| 7 | Damages Expert Summary Page |
| 8 | AG Referral Letter |
| 9 | Unethical Settlement Offer and Lien Language |

| 10 | Plaintiff's Timeline |
| 11 | Text Message Communications with Defendant |

# EXHIBIT 1

CP **FILED**
3/29/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITES STATES DISTRICT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

JURISDICTION

| | |
|---|---|
| HELEN ALLEN,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY,<br><br>Defendant | Case No.: 1:21-cv-00962<br><br>COMPLAINTS FOR VIOLATION OF CIVIL RIGHTS AND STATE SUPPLEMENTAL CLAIMS<br><br>JURY DEMANDED |

FIRST AMENDED COMPLAINT

JURISDICTION AND VENUE

1. This is an action to the United States Constitution, Title VII Civil Right Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended, and 42 U.S.C. §§ 1981 et seq., as amended. This court has jurisdiction under and by virtue of 28 U.S.C. §§1331, 1343, and 1367.

2. Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. §1391 (b) as the unlawful employment practices stated herein were, in whole

or in part, committed within the Northern District of Illinois. Venue further lies within this judicial district under 28 U.S.C. §1391 (c), since Defendant Ford Motor Company does business in this judicial district at least by operating plants in Illinois.

## PARTIES

3. At all times herein mentioned, Plaintiff, Helen Allen (hereinafter "Plaintiff"), was employed by Defendant Ford Motor Company (hereinafter "Ford").

4. At all times herein mentioned, Defendant, Ford, was and is believed and alleged hereon to be a corporation operating within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

5. Plaintiff was employed by Ford Motor Company from 2000 through her forced medical retirement in 2020.

6. From 2012 until 2016 until her transfer to Sharonville Transmission Plant in Sharonville Ohio, in August 2016. Plaintiff was employed at Ford Motor Company Chicago Assembly Plant.

7. Plaintiff voluntarily accepted a transfer back to her original Plant she was first hired into.

8. Plaintiff was denied the opportunity to work once she relocated, because of her 2014 work related injury and Workers Compensation Claim

9. Plaintiff is an African American female.

10. Ford is a recidivist offender that willfully ignored the issues and evidence raised in prior litigation and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace.

11. Ford knowingly allowed acts of sexual, racial and retaliatory harassment to occur toward Plaintiff Allen.

12. Ford engaged in a pattern and practice of discrimination, harassment, retaliation towards Plaintiff including, but not limited to:

    A.   Profanity

    B.   Unwelcome and unwanted touching and groping.

    C.   Request for sexual favors.

    D.   Unwanted and unwelcome sexual advances.

    E.   Being subjected to jeers, lewd comments, sexual suggestions, catcalls and the like:

    F.   Being stared at by male employees who were focused on certain parts of Plaintiff's body.

    G.   Being subjected to comments or offers of sexual contact, males making offensive comments stating what they could or would like to do to Plaintiff or other women.

    H.   Being subjected to men exposing their genitals and/or showing pictures of their genitals.

    I.   Graffiti in the workplace.

    J.   By being ridiculed for having complained and/or being admonished not to complain in the future.

    K.   Being referred to as a "snitch bitch", "Bin Ladens wife", and "hoe".

L. In many instances, this harassment occurs in the presence of Ford's supervisors and Ford would take no disciplinary actions, or insufficient action, against employees who engage in such sexually offensive conduct.

M. Ford's male supervisors routinely assigned tasks to employees on a discriminatory basis by assigning better task to those female employees who submit to their sexual advances or who agree to go out with them.

13. Male employees routinely make discriminatory and harassing remarks or gestures in front of supervisors and managers who take no action to discipline employees, to eradicate the harassment or maintain an appropriate environment.

14. Defendant maintained a pattern and practice of inferior treatment of females, including Plaintiff, with respect to the terms and conditions of employment, including job assignments, harassing, training, promotions and overtime assignments.

15. Ford was aware of the ongoing discrimination and harassment perpetrated against Plaintiff that occurred daily in an open manner, such that it was observed by employees and supervisors, and Ford turned a blind eye toward it.

16. Ford agrees to a reconciliation agreement for $10.1 million for Sex Harassment and Race Discrimination complaints with EEOC for Chicago Assembly and Chicago Stamping employee's August 2017. Ford chose to voluntarily resolve this issue without any admission of liability with the EEOC to avoid and extended dispute, "Ford spokesman Kelli Felker said.

   a. Plaintiff was denied compensation from the reconciliation agreement that was created from Plaintiffs initial charges.

17. Senate Resolution 1076:

   a. March 5, 2018, Senate Task Force on Sexual Discrimination and Harassment Awareness and Prevention adopted, Senate Resolution 1076, as a result of

Plaintiffs testimony on the mistreatments done to her at Chicago Assembly Plant.

## COUNT 1

### TITLE VII-SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

18. Plaintiff re-alleges and incorporates paragraphs one (1) through sixteen (16) as though fully set at this place.

19. Plaintiff adopts and incorporates by reference her allegations of sexual harassment and of a hostile work environment alleged in her EEOC charges.

20. Plaintiff has been subjected to sexual harassment including but not limited to the following ways:

   a.   Unwanted or unwelcome sexual advances

   b.   Unwelcome or unwanted touching

   c.   Request for sexual favors

   d.   Stories of sexual conquest, desires, and escapades.

   e.   Comments about female anatomy,

   f.   Comments about what a male "would like to do" to or with a female sexually.

   g.   Comments of a sexually suggestive nature.

   h.   Name calling using names demeaning towards women such as "bitch", "slut" or "whore" or "hoe".

   i.   Pictures of genitalia and/or of a sexual nature.

   j.   Lurid, foul and offensive language and:

    k.   Other conduct of a sexually inappropriate nature for the workplace.

21. Superintendent Mike Polk repeatedly told sex jokes in plaintiffs' presence and bragged about his genitalia being larger than his counterpart.

22. Superintendent Fred Jones encouraged Skilled Tradesmen to engage in sexual conversations in plaintiffs' presence.

23. In addition to being sexually harassed Plaintiff was subjected to a hostile environment in that she was forced to endure hostile conditions in which she and other women were harassed. This hostile working environment included but was not limited to the following instances.

    a.   Having sex in the workplace, the parking lot, and other areas of the workplace:

    b.   Talking about sexual escapades which took place both in and outside of the workplace:

    c.   Making unwelcome request for sexual favors and grotesque sexual acts:

    d.   Showing pictures of genitalia:

    e.   Commenting about women's vaginas and breast in degrading and sexual way:

    f.   Commenting about the desire to perform sex acts on Plaintiff and other women coworkers:

    g.   Jeering, making lewd comments, sexual suggestions and catcalls:

    h.   Referring to new female employees as "fresh meat".

    i.   Constantly staring at women's breast and buttocks:

    j.   Offering better job assignments, better overtime opportunities, and better opportunities for promotions to female employees who submitted to their sexual advances:

    k.   Demoting and/or assigning Plaintiff and similarly female employees to less desirable job opportunities when they rejected male supervisors' request:

24. In addition, Plaintiff repeatedly complained about sexual harassment during the relevant Time Period by calling Ford's harassment hotline and making numerous reports to Ford's Labor Relations Representative Natalie Dahringer and Labor Relations Superintendent Flouretta Drummer and/or Human resources department Superintendent Anthony Dodson and Plant Manager Brent Merritt.

25. Plaintiff complained outside the facility to Corporate Labor Affairs Manager, Jim Larese and Vice President of Labor Affairs, Stacy Allerton and the Defendant to take prompt remedial action.

26. As a direct and proximate results of the foregoing acts of sexual harassment, Plaintiff suffered damages, including lost time from work, anxiety, humiliation and emotional distress, and have suffered physical and psychological injuries.

## COUNT 2

### TITLE VII GENDER/SEX DISCRIMINATION

27. Plaintiffs re alleges and incorporates paragraphs one (1) through twenty-three (23) as though fully set forth at this place.

28. Plaintiff was treated differently than her male counterparts.

29. Plaintiff was subjected to a hostile working environment, sexual harassment, gender discrimination and discriminatory comments from supervisors and coworkers which males are not required to endure as a condition of employment.

30. Plaintiff was given different assignments than male counterparts and her and other women was told that they were not being assigned to perform certain task "because they are women".

31. Plaintiff was subjected to comments of a derogatory nature, including but not limited to being regularly referred to as a "snitch bitch", "hoe", and "slut".

32. Women in general are not viewed as equals at Defendant but rather as sexual objects.

33. Being constantly exposed to unwanted sexual comments and discussions is offensive and degrading to Plaintiff:

34. Plaintiff was treated differently than similarly situated male employees as they were not required to endure sexual harassment as a term and condition of their employment.

35. Plaintiff made complaints to Defendant about being exposed to a discriminatory, sexually harassing and hostile work environment.

36. Defendant failed to promptly discipline or reassign any males whom Plaintiff complained about and did not conduct a thorough or timely investigation of Plaintiff's complaints.

37. As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

COUNT 3

RACE DISCRIMINATION UNDER 1981

38. Plaintiff re-alleges and incorporate paragraphs one (1) through thirty -six (36) as though fully set at this place.

39. Plaintiff is an African American female.

40. Defendant's treatment of the Plaintiff denied her the full and equal treatment of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

41. Plaintiff as an African American was subjected to a racially hostile workplace environment that provided similarly situated white employees more favorable terms and conditions of employment.

42. White employees were given preference in promotions, especially at Ford Chicago Assembly Plant.

For example:

   a. Hourly workers in Ford's Chicago Assembly Plant are subject to the instructions of salaried Supervisors or Managers of various titles.

   b. Ford promotes some hourly employees into lower-level manager rules, carrying titles of "Team Leader".

   c. Reassignment to the positions of Team Leaders is considered promotions and are accompanied with increased levels of managerial responsibilities and wage increases and/or increased overtime opportunities.

   d. Between 2012 and 2016, Ford was short Team Leaders in Chicago Assembly Plant Skilled Trades.

   e. Ford promoted white co-workers.

   f. In 2015, Plaintiff applied for a promotion to become a Safety Representative.

   g. Plaintiff was told she "did not have knowledge" and was not even interviewed for the position, however a white employee with less seniority and experience at Ford was promoted to the Safety Representative position.

43. From 2012 through 2016, Plaintiff tolerated a racially discriminatory workplace environment in which symbols of racism were permitted to be posted and to remain in plain sight of African American employees, such as:

   a. Racial and homographic graffiti in plain view of Plaintiff.

b. Constant reminders of racism had been painted in the restrooms and Plaintiff had been forced to endure these reminders. By way of example, these statements included "Niggers go home or die". Despite numerous complaints, Defendant permitted this statement to remain posted in the restroom for a substantial period of time.

44. Racial (and sexist) epithets have been yelled by white employees towards black employees at the Chicago Assembly Plant.

45. As a result of foregoing intentional conduct, Plaintiff has been denied equal rights and have been denied equal enjoyment of the benefits, privileges, terms and conditions of employment as white employees.

46. As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 4

### TITLE VII RETALIATION

47. Plaintiff re-alleges and incorporates paragraphs one (1) through forty-five (45) as though fully set forth at this place.

48. Plaintiff adopts and incorporates by reference her allegations of retaliation alleged in her EEOC charges.

49. Plaintiff was retaliated against for making formal complaints about Supervisors sexual advances, comments, innuendo, and lurid foul and offensive language.

50. As a result of Plaintiff's complaints of sexual harassment and discrimination, supervisors went out of their way to make Plaintiff's job more difficult and took extra care to subject Plaintiff to increased scrutiny and/or discipline.

51. In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Defendant retaliated against Plaintiff and treated Plaintiff differently than others in the following ways:

   a. Repeatedly unfairly disciplining Plaintiff:

   b. After Plaintiff complained about being sexually harassed by Superintendent Mike Polk, Polk would assign her jobs that required two or more Plumbers to complete. She was given workloads impossible for one person to complete safely.

   c. After complaining about sex harassment from Fred Jones and Co workers plaintiff was subjected to more intense sexual harassment.

   d. Superintendent Rick Webber berated the Plaintiff in presence of male coworkers and assigned her to unsafe work conditions. When plaintiff reported his actions, his Supervisor, Body Shop Area Manager Anthony Williams also engaged in the harassment of the Plaintiff for adhering to safety practices as mandated.

   e. Plaintiff was assigned to work with men who were vivid and thorough when explaining their sexual conquest.

   f. Plaintiffs' complaints were disregarded since she worked in a male dominated trade. Plaintiff was expected to accept the vulgar and disrespectful conversations she had to endure daily.

52. Furthermore, Defendants retaliated against Plaintiff for her complaints of sexual harassment and discrimination and her EEOC charges, by offering Plaintiff a voluntary transfer to her home plant,

then denying her the opportunity to work with work related restrictions. Eventually forcing Plaintiff into a medical retirement, for work related PTSD, from Ford despite her twenty-year tenure with the company.

53. Defendant's retaliatory acts against Plaintiff constitute materially adverse employment actions.

54. Defendant's reason for Plaintiff's retirement was merely pretext for illegal retaliation.

55. There is a casual connection between Plaintiff's protected activity and Defendant's retaliatory actions.

56. Similarly situated employees who did not engage in protected activity were treated more favorable than Plaintiff.

57. Plaintiff was again retaliated against after her voluntary transfer to her home plant. Plaintiff filed a lawsuit against Ford Motor Company, Sharonville Transmission Plant in Ohio. Helen Allen-Amos vs. Ford Motor Company, 1:19-cv-1012.

58. As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical and psychological injuries.

COUNT 5

BATTERY

59. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-seven (57) as though fully set forth at this place.

60. Plaintiff was subjected to a harmful or offensive touching, without her consent by one or more of Defendant's supervisors, managers and/or employees.

61. Defendants took no steps to prevent Plaintiff from suffering a battery.

62. The Supervisors. Managers, and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

63. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 6

## ASSAULT

64. Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-two (62) as though fully set forth at this place.

65. The foregoing acts by the Defendant were done intentionally.

66. These acts placed Plaintiff in fear or reasonable apprehensions of immediate battery or harmful or offensive touching.

67. Defendant took no steps to prevent Plaintiff from being assaulted.

68. As a direct and proximate results of the Defendant's conduct, the Plaintiff was damaged.

## COUNT 7

## INTENIONAL INFLICTION OF EMTIONAL DISTRESS

## (PRESERVED FOR APPEAL)

69. Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-seven (67) as though fully set forth at this place,

70. Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

71. Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

72. Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

73. As a direct and proximate results of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the plaintiff and Plaintiff's similarly situated persons, respectfully request that this Court provide the following equitable and monetary relief:

A. That Plaintiff be granted punitive damages in an amount to be determined at trial.

B. That Plaintiff be granted special damages, including lost wages and benefits,

C. That Plaintiff be granted punitive damages in an amount to be determined at trial.

D. That the Court grant to Plaintiff his reasonable incurred attorneys' fees, cost, litigants' expenses, and pre-judgement interest: and post judgement interest.

E. That the Court grants such and further relief as the Court may deem just and equitable.

BY: s/ Helen Allen

Helen Allen

Pro Se Litigant

28 Township Rd 1370

Proctorville Ohio 45669

(513) 571-3634

wintressssssa@gmail.com

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY

s/ Helen D. Allen

Pro Se Litigant

28 Township Rd 1370

Proctorville, Ohio 45669

(513) 571-3634

wintressssssa@gmail.com

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| HELEN ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 21-cv-00962 |
| v. | ) | |
| | ) | The Honorable Judge Mary Rowland |
| FORD MOTOR COMPANY, | ) | |
| | ) | Magistrate Judge Jeffrey Cummings |
| Defendant. | ) | |

**SECOND AMENDED COMPLAINT**

HELEN ALLEN ("Plaintiff" or "Allen"), by and through her undersigned counsel, Cass

Thomas Casper, Esq., DISPARTI LAW GROUP, P.A., complains as follows against Defendant

Ford Motor Company ("Defendant" or "Ford").

**JURISDICTION AND VENUE**

1. Jurisdiction over the Plaintiff's federal law claims exists pursuant to 28 U.S.C. § 1331 as

these claims involve federal questions under Title VII (42 U.S.C. § 2000e-5) and Section 1981

(42 U.S.C. §§ 1981 and 1981(a)).

2. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367

because the state law count is so related to the other claims in this action as to form part of the

same case or controversy.

3. This Court has jurisdiction over the Parties and the subject matter.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)

because the events and omissions giving rise to the claims herein have occurred, in whole or in

part, in this judicial district.

5. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because

Defendant does business here by operating at least three (3) plants, including the Chicago Assembly Plant.

## PARTIES

6. Plaintiff Allen is a legal adult and, at the time of the filing of this First Amended Complaint, a resident of Ohio. At relevant times, Plaintiff has held the job classification of classified driver with Defendant.

7. Defendant Ford Motor Company operates at least two facilities in the Chicagoland area, including the Chicago Assembly Plant at 12600 South Torrence Avenue in Chicago, Illinois, and the Ford Stamping Plant located at 1000 East Lincoln Highway in Chicago Heights, Illinois.

## ADMINISTRATIVE PREREQUISITES

8. Plaintiff, as alleged herein, suffered a pattern of unlawful harassment and discrimination Substantially-similar to the other Plaintiffs in *Van v. Ford Motor Company*, 14-cv-08708 ("*Van*"), of which Plaintiff was a co-Plaintiff until her claims were severed leading to the instant case.

9. Plaintiff filed a charge discrimination numbered 846-2013-24644, and subsequently amended that charge, a true and accurate copy of which is attached as Group Exhibit 1.

10. Plaintiff received a right-to-sue letter on October 7, 2014, a true and accurate copy of which is attached as Group Exhibit 1.

11. Plaintiff has properly exhausted her administrative remedies as a matter of her charge and right-to-sue letter, and this case is properly before this Court.

## FORD IS A RECIDIVIST OFFENDER AS TO EEO LAWS

12. Prior to the complaint filed in *Van*, at least nine other people had sued Ford for sexual

2

harassment, sex discrimination, race discrimination, assault, and/or battery in *Rivera v. Ford Motor Company*, 95-cv-2990, a case filed in this judicial district.

13. Another 14 women filed suit against Ford in *Warnell v. Ford Motor Company*, 98-cv-1503, in this judicial district.

14. Ford was previously subjected to workplace monitoring by the EEOC and a reasonable cause determination that sexual harassment occurred and was occurring in its Chicago-area manufacturing facilities based upon allegations of supervisors making degrading references to women and female genitalia, grabbing, touching, and groping of female workers, sexist graffiti, and the presence of pornographic material in the workplace.

15. Despite this prior track record, Ford continues to allow a sexually hostile work environment to persist in its Chicago-area plants, leading to *Van* and the instant lawsuit.

### COUNT 1 – GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF TITLE VII (FEMALE)
(Plaintiff v. Defendant Ford Motor Company)

16. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs one through 15 of this Second Amended Complaint as if fully restated herein.

17. Plaintiff has suffered sexual harassment in at least the following ways, either personally and/or by working in an environment permeated by such actions of which she was aware:

    a. Unwanted and unwelcome sexual advances;

    b. Unwelcome and unwanted touching;

    c. Requests for sexual favors;

    d. Stories of sexual conquests, desires, or escapades;

    e. Comments about the female anatomy;

    f. Comments about individual womens' specific body parts;

3

    g.  Comments about what a male would like to do to a particular female sexually;

    h.  Comments of a sexually suggestive nature;

    i.  Name-calling, to include, but not limited to, comments directed to women such as "bitch," "ho," "slut," "whore," "dike," "good pussy," and other similarly degrading terms;

    j.  Graffiti and pornographic images;

    k.  Pictures of genitalia and/or of a sexual nature;

    l.  On at least one occasion, a sex toy was brought into the workplace and sent around via photogrpah;

    m.  Lurid, foul and offensive language; and,

    n.  Other conduct of a sexually inappropriate nature for the workplace.

18. Plaintiff additionally states that she was aware of sexual batteries and unwelcome, unwanted touchings occurring in the workplace, including, but not limited to, the following:

    a.  Supervisors groping, touching, caressing, hugging, and/or attempting to kiss women in the workplace;

    b.  Supervisors forcibly attempting sexual acts on women in the workplace;

    c.  Supervisors staring at female workers in sexual ways and staring at female workers' breasts and buttocks;

    d.  Supervisors intentionally pushing their genital areas up against female workers' backsides in an effort at "dry-humping;"

    e.  Supervisors belittling women by calling them names, referring to them as "fresh meat," and verbally treating women as sex objects.

19. Allen states that she was specifically subjected to the following actions:

    a.  Sexual stares;

4

b. Male co-workers discussing their penis sizes in her presence.

c. A male co-worker told her, words to the effect, that he had "all of ten inches waiting for her pleasure" and, after a female reported much the same statement was made to her, Plaintiff confronted the supervisor who iterated that "Well, you know, you can get some, too."

d. She personally witnessed male supervisors stand behind female co-workers and stare at their buttocks.

e. Plaintiff overheard male supervisors brag about their sexual conquests with female employees.

f. Plaintiff was personally subjected to, and observed other women being subjected to, sexual gawking by male supervisors in the plant that occurred all the time throughout the plant.

g. Male co-workers anonymously left totems of banana's sticking up in the air and symbols depicting penises, including in Plaintiff's work area.

h. Plaintiff was aware of numerous offensive graffiti images of penises, and a degrading T-shirt referring to women as "Bitch Niggaz" and stating "a Bitch will Fuck anybody Fo job security."

i. Coby Millender, Mike Polk, Tony Amandillo, Dazman Gray, and numerous other co-workers regularly made offensive, disgusting jokes of a sexual nature and regularly talked about female co-workers' "big coochies," "fat asses," "titties," "pussies," and would brag to each other about their penis sizes.

j. Plaintiff observed male co-workers and supervisors instruct other workers to engage in sex acts, including oral sex, with them.

k. Plaintiff observed co-workers viewing, buying, selling, and circulating

pornography in the workplace.

l.   Plaintiff observed pornographic images in the maintenance locker area.

m.   Plaintiff observed a co-worker named Omar to sell pornography to others in the workplace.

n.   Plaintiff was aware that supervisor Myron Alexander collected and shared nude photographs of workers on his cell phone, and that when supervisor Dazman Gray became aware that Alexander was sharing sexy pictures of his wife, Gray became violent with Alexander.  All of this had the effect of terrifying Plaintiff.

o.   Plaintiff was aware that Kevin "Red" Marshall would walk through the plant and flirtatiously engage women in unwanted requests for dates or romance.

p.   Plaintiff was aware that Red Marshall was revered by coworkers for his workplace sexual conquests.

q.   Plaintiff heard on numerous occasions co-workers talking about how big someone's "pussy" was and how they would like to "get up in that ass" or words to that effect in reference to female co-workers.

r.   Plaintiff heard constant sex jokes on a daily basis from Superintendent Mike Polk and carpenter Tony Amadillo.

s.   Plaintiff heard or heard of female supervisors being subjected to the same sexually-degrading conduct as rank and file women, such as being touched, subjected to cat calls, referred to as a "ten," enduring comments such as "I want to fuck her," and men giving them elevator eyes and gawking at them and their body parts.

t.   Plaintiff heard a female coworker brag about performing sex acts with a supervisor in order to get better treatment and to become "untouchable."

6

u.  Plaintiff was also aware of a male worker who received oral sex at the CAP facility in the electrician's crib, and another who was caught engaging in sex acts in the paint building.

20. The sexual harassment and conduct of a sexual nature were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile work environment based upon her gender (female).

21. At the same time, the sexual harassment was so pervasive that some women would dress provocatively in order to gain favor with men, and would sleep with supervisors in order to get more favorable jobs, assignments, and benefits, all of which Plaintiff refused to do to her disadvantage.

22. Too, Plaintiff was aware of a female co-workers who would fondle men's genitals in the workplace, sit on their laps, squeeze men's behinds, and like physical actions in order to curry favor.

23. Women who engaged in the foregoing actions received more favorable treatment than women who did not, including Plaintiff who refused to do so.

24. Plaintiff reported the foregoing and other acts of sexual harassment by calling the sexual harassment telephone hotline, making reports to labor relations, and/or reporting the conduct to her supervisors and to her union.

25. For example, Plaintiff discussed her specific sexual harassment, discrimination, and retaliation issues with her supervisors and Ford's Labor Relations staff, to include, but not limited to, Fred Jones, Natalie Dahrenger, and the hotline.

26. Fred Jones advised Plaintiff that he would not do anything to change sexually-harassing and discriminatory work environment.

27. Plaintiff's complaints to the aforementioned individuals went without changes to her working conditions, and the reporting process was futile and led to no changes.

28. Plaintiff also became aware that one of the union committeemen had been in a relationship with a supervisor at the plant, which undermined the union as a meaningful mechanism to challenge harassment and discrimination, even if such allegations were redressable by the union (which they were not redressable by the union, in any event).

29. With respect to other complaints Plaintiff made, she would give statements to Labor Relations Representatives only to have nothing occur whatsoever to follow up on such complaint.

30. Other Labor Relations Representatives to whom Plaintiff complained treated her complaints with nonchalance and without seriousness, and none of these complaints ever led to any findings or changes.

31. Plaintiff also complained about race-based harassment, including on numerous occasions about supervisors referring to Plaintiff and other black women as "black bitch," "bitch," and "nigger."

32. After Plaintiff reported the activities, she experienced retaliatory actions, such as penises being drawn in employee break areas, totems in her work area resembling penises, and the circulation of a t-shirt containing retaliatory and degrading language about women who complain.

33. At no time did Ford take prompt remedial action to stop the discriminatory and harassing acts toward the Plaintiff.

34. As a direct and proximate cause of the foregoing sexual harassment, Plaintiff has been

damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotional distress.

35. Plaintiff's damages include psychological injury for which she has sought psychological treatment and therapy.

36. As a direct and proximate cause of the foregoing sexual harassment, Plaintiff has suffered sexual harassment within the meaning of Title VII.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in her favor, and against Defendant, and enter and order all available relief, including compensatory damages in an amount up to $300,000, lost pay and benefits, and injunctive and declaratory relief. Plaintiff additional requests that this Court enter an award of reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT 2 – RETALIATION IN VIOLATION OF TITLE VII
(Plaintiff v. Defendant Ford Motor Company)

37. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through 36 of this Second Amended Complaint as if fully restated herein.

38. Plaintiff has engaged in numerous instances of Title VII protected activity, including reporting sexual harassment, discrimination, and retaliation to Ford via its sexual harassment hotline, to her supervisors, to her union, and to Labor Relations, as well as giving evidence in the *Van* proceedings and being a Plaintiff in that case.

39. Plaintiff has suffered retaliation in violation of Title VII in at least the following ways:

a. Supervisors have gone out of their way to make Plaintiff's job more difficult and subjected her to scrutiny over and above that given to employees who did not engage in protected activity.

b. Labor Relations representatives disclosed Plaintiff's confidential complaints

9

about harassment and discrimination to others in the plant with the goal of shaming Plaintiff and branding her as a snitch.

c.  Employee Coby Millender told approximately 200 other employees that Plaintiff was a complainer who had filed a sexual harassment lawsuit against Ford, which was an attitude fostered in Millender by virtue of his union office and close working relationship with Ford's administration.

d.  Plaintiff was subjected to numerous acts of vandalism in her work area, including depictions of penises/phalluses and testicles, all meant to mock Plaintiff for her complaints.

e.  Jim LaRese, a senior plant manager, told his immediate staff to "be careful around Helen because she's filing a lawsuit against Ford."

f.  Plaintiff was repeatedly assigned to unfavorable work assignments in an effort to trip her up and lead to more discipline than others.

g.  Ford denied Plaintiff bathroom breaks allowed to employees who did not engage in protected activity.

h.  Ford suspended Plaintiff, subjected her to discipline, and deprived her of pay on the basis of frivolous allegations not charged against employees who did not engage in protected activity.

i.  Plaintiff was denied equal overtime opportunities as employees who did not engage in protected activity, leading to tangible losses in pay as a result.

j.  Plaintiff was advised by Area Manager Anthony Williams' Clerk that supervisors were "out to get" her because she is a "complainer."

k.  Plaintiff had a union grievance that was held up far beyond contractual timelines.

l.  Plaintiff's breaks were interrupted by phone calls for her to go to work, which

10

was not done to employees who did not complain.

m. Plaintiff was labeled as a snitch by co-workers and management, to include Sam Penkala, Fred Jones, Mike Polk, Rick Webber, Desmond Gray, Coby Millender, Jeff Bacon, Aaron Stryker, Tony Talarita, Jim Larese, and Flueretta Drummer, among others, such that these individuals would give others the impression that Allen was troublesome and prone to filing complaints.

n. Plaintiff was also concerned about having her tries slashed or windows busted due to her complaints, which was a fear among women in the plants.

40. Like her sexual harassment complaints, Plaintiff also repeatedly reported retaliatory conduct to the hotline and to Labor Relations, but was met with the same inaction and nonchalance as occurred with her sexual harassment complaints.

41. At no time did Ford take prompt remedial action to stop retaliatory acts toward the Plaintiff.

42. As a direct and proximate cause of the foregoing retaliation, Plaintiff has been damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotional distress.

43. Plaintiff's damages include psychological injury for which she has sought psychological treatment and therapy.

44. As a direct and proximate cause of the foregoing acts, Plaintiff has suffered retaliation within the meaning of Title VII.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in her favor, and against Defendant, and enter and order all available relief, including compensatory damages in an amount up to $300,000, lost pay and benefits, and

11

injunctive and declaratory relief. Plaintiff additional requests that this Court enter an award of reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

### COUNT 3 – RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT RACIAL HARASSMENT IN VIOLATION OF TITLE VII (BLACK)
(Plaintiff v. Defendant Ford Motor Company)

45. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through 44 of this Second Amended Complaint as if fully restated herein.

46. Plaintiff is a member of a racial minority (African-American).

47. During Plaintiff's tenure at Ford, she has been forced to work under supervisors who have been reported to be racist or have racist attitudes.

48. Plaintiff has been forced to work in a racially hostile work environment that provided white employees more favorable treatment and terms and conditions of employment. For example:

 a. Plaintiff was repeatedly denied breaks and overtime on equal basis to non-black workers.

 b. Plaintiff and other black females have been repeatedly and frequently referred to as "black bitch," without it being redressed by management despite Plaintiff's complaints about it.

 c. Plaintiff and other black females in and out of her presence were called "nigger" by white co-workers and supervisors on numerous occasions.

 d. Plaintiff and other black females have been referred to as "bitch niggaz."

 e. Similarly-situated white co-workers were consistently given job assignments with better work tools and appurtenances, such as chairs, desks, and computers, while Plaintiff is not given such work assignments.

f. Plaintiff has suffered stereotypical comments about her hair, figure, person, and clothes from plant supervisors and co-workers.

g. Plaintiff heard a supervisor call black workers stupid motherfuckers, playing into a stereotype that black people are uneducated and unintelligent.

h. Plaintiff was subjected by coworkers on the floor to comments about her Islamic faith and that she is a black Muslim, to include that she is a scarf-wearing bitch and married to Osasma bin Laden.

i. Plaintiff was written up for late attendance, but another employee, Kyna Holt, had her record cleared while Plaintiff did not because Kyna was not a black female.

49. Plaintiff reported such discriminatory conduct via the hotline, labor relations, her union, and to supervisors, without any changes, including to Tom Hernandez, Kevin Siemers and other supervisors and superintendents.

50. As a result of the foregoing conduct, Plaintiff has been denied equal rights and equal enjoyment of the benefits, privileges, terms and conditions of employment as white employees.

51. As a direct and proximate cause of the foregoing discrimination, Plaintiff has been damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in her favor, and against Defendant, and enter and order all available relief, including compensatory damages up to $300,000, lost pay and benefits, and injunctive and declaratory relief. Plaintiff additional requests that this Court enter an award of reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT 4 – RACE DISCRIMINATION UNDER 42 U.S.C. § 1981
(Plaintiff v. Defendant Ford Motor Company)

52. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through 48 of this Second Amended Complaint as if fully restated herein.

53. This is a claim made under 42 U.S.C. § 1981.

54. Plaintiff is a member of a racial minority (African-American).

55. Defendant's treatment of Plaintiff has denied her full and equal benefit of all laws for the security of persons and property as is enjoyed by white citizens in violation of 42 U.S.C. § 1981.

56. Plaintiff has been forced to work under supervisors who have been reported to be racist or have racist attitudes .

57. Plaintiff has been forced to work in a racially hostile work environment that provided white employees more favorable treatment and terms and conditions of employment. For example:

      a.  Plaintiff received less overtime than non-complaining white and black employees as a result of her complaints.

      b.  Plaintiff and other black females have been repeatedly and frequently referred to as "black bitch," without it being redressed by management despite Plaintiff's complaints about it.

      c.  Plaintiff was called "nigger" by white supervisors on numerous occasions.

      d.  Plaintiff and other black females have been referred to as "bitch niggaz."

      e.  Plaintiff and other black females have been referred to as "bitch niggaz."

      f.  Similarly-situated white co-workers were consistently given job assignments with better work tools and appurtenances, such as chairs, desks, and computers, while Plaintiff is not given such work assignments.

14

g. Plaintiff has suffered stereotypical comments about her hair, figure, person, and clothes from plant supervisors and co-workers.

58. The foregoing actions were taken against Plaintiff intentionally.

59. As a result of the foregoing conduct, Plaintiff has been denied equal rights and equal enjoyment of the benefits, privileges, terms and conditions of employment as white employees.

60. As a direct and proximate cause of the foregoing discrimination, Plaintiff has been damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in her favor, and against Defendant, and enter and order all available relief, including compensatory damages in an amount to be determined at trial, lost pay and benefits, and injunctive and declaratory relief. Plaintiff additional requests that this Court enter an award of reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

**JURY DEMANDED ON ALL COUNTS**

Respectfully submitted,

**HELEN ALLEN**

*/s/ Cass T. Casper*

By:_____
Cass T. Casper, Esq.
Her Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
F: (312) 846-6363
E: ccasper@dispartilaw.com

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2022, he caused to be served the foregoing Second Amended Complaint on all counsel of record via this Court's CM/ECF filing system, and that all such counsels are registered e-filers.

/s/ *Cass T. Casper*

_____

16

# EXHIBIT 3

Across all five women, both Cass Casper and the Disparti Law Group weakened core claims, narrowed systemic evidence, removed statutory damages, limited tort recovery, diluted retaliation timelines, and reduced overall case value—benefiting Ford Motor Company while harming the plaintiffs.

Henry's full complaint highlights that these omissions were not innocent mistakes, but a pattern of selective weakening of claims.

This Master Exhibit demonstrates:

• A consistent pattern of misconduct.

• Systematic reduction of legal claims.

• Uniform capping of damages.

• Selective preservation for only one plaintiff (Henry).

• Significant harm to Allen, Clyburn, Bledsoe, and Thomas.

## MASTER EXHIBIT – Comparison of Claims Stripped Across Five Plaintiffs (Casper & Disparti Law Group)

This Master Exhibit provides a consolidated comparison of how Attorney Cass T. Casper and Disparti Law Group weakened, stripped, or diluted the legal claims of five female plaintiffs severed from the Van v. Ford Motor Company litigation.

Plaintiffs included:

1. Helen Allen

2. Bernadette Clyburn

3. Terri Lewis-Bledsoe

4. Orissa Henry (Granted access to sealed transcript denied to Allen)

5. Rose Thomas (Disparti Law Group)

The tables below identify which claims were removed, under-pled, or preserved, and how these actions

benefited Ford Motor Company while weakening each plaintiff's case.

--------------------------------------------------------------------------------

SECTION 1 — CLAIMS OVERVIEW ACROSS ALL FIVE WOMEN

--------------------------------------------------------------------------------

Key:

✔ = Preserved

✗ = Removed

▲ = Partially preserved / under-pled

COUNT COMPARISON TABLE

----------------------

| Claim Type | Allen | Clyburn | Bledsoe | Henry | Thomas (Disparti) |
|---|---|---|---|---|---|
| Title VII Harassment | ✓ | ✓ | ✓ | ✓ | ✓ |
| Title VII Discrimination | ✓ | ✓ | ✓ | ✓ | ✓ |
| Title VII Retaliation | ✓ | ✓ | ✓ | ✓ | ✓ |
| §1981 Race Discrimination | ✓ | ✓ | ✗ | ✓ | ✗ |
| §1981a Punitive Damages | ✗ | ✗ | ✗ | ✓ | ✗ |
| ADA / ADAAA | ✗ | ✗ | ✗ | ✓ | ✗ |
| Assault | ✗ | ✓ (in Van) | ✗ | ✓ | ✓ |
| Battery | ✗ | ✓ (in Van) | ✓ | ✓ | ✓ |
| Intentional Infliction ED | ✗ | ✓ (in Van) | ✗ | ✓ | ✓ |
| Negligent Supervision | ✗ | ✗ | ✗ | ✗ | ✗ |
| Class-wide Pattern Claims | ✗ | ✗ | ✗ | ✓ | ✗ |
| Systemic EEOC Findings | ✗ | ✗ | ▲ | ✓ | ▲ |
| Punitive Tort Damages | ✗ | ✗ | ✗ | ✓ | ✗ |
| Workers Comp Retaliation | ✓ | ✓ | ✗ | ✓ | ✗ |
| Long-Term Narrative | ✗ | ✗ | ▲ | ✓ | ▲ |
| Damages Uncapped | ✗ | ✗ | ✗ | ✓ | ✗ |

----------------------

----------------------

SECTION 2 — PATTERN OF MISCONDUCT

--------------------------------------------------------------------------------

A repeated pattern emerges across Allen, Clyburn, Bledsoe, and Thomas:

1. **Removal of uncapped damage categories**

  - §1981a punitive damages deleted

  - Tort punitive theories not requested

  - ADA deleted

  - IIED deleted or under-pled

2. **Reduction of systemic allegations**

  - Rivera, Warnell history removed or condensed

  - EEOC conciliation failures minimized

  - Pattern-of-practice elements omitted

3. **Erasure of comparator evidence**

  - Male-favoritism and promotion comparators removed

  - Retaliation timelines shortened

4. **Damages capped at Title VII limits**

  - Language "compensatory damages up to $300,000" inserted

5. **Simplification of pleadings to weaken leverage**

  - Original Van complaints: 150+ pages of systemic misconduct

  - Amended complaints: 12–15 pages

6. **Ford's benefit:**

  - Lower exposure

  - Easier summary judgment

  - Smaller settlement value

  - No punitive damages

  - No class-wide implications

---------------------------------------------------------------------------

SECTION 3 — INDIVIDUAL CASE SUMMARIES

---------------------------------------------------------------------------

HELEN ALLEN

-----------

Casper removed:

• All torts (assault, battery, IIED)

• ADA elements

• Racist graffiti

• Retaliation timeline

• Senate Resolution & EEOC conciliation history

• Comparator evidence

Effect: Reduced to minimal Title VII case capped at $300k.

BERNADETTE CLYBURN

-------------------

Casper cut:

• ADA claims

• Class and pattern allegations

• §1981a punitive damages

• EEOC/recidivist evidence

Effect: 30-count complaint reduced to 6-count individual action.

TERRI LEWIS-BLEDSOE

--------------------

Casper removed:

• ADA claims

• IIED

• Assault

• Systemic wrongdoing except short summary

• §1981a punitive

Effect: Lost majority of recovery potential; Ford insulated.

ORISSA HENRY

------------

Casper preserved:

• ADA

• IIED

• Assault

• Full EEOC systemic allegations

• Long-term narrative

Effect: Demonstrates selective weakening of other women, since Casper

clearly knew how to plead a complete complaint.

ROSE THOMAS (Disparti Law Group)

----------------------------------

Disparti preserved:

• Assault

• Battery

• IIED

• Core systemic EEOC findings

BUT removed:

• §1981

• ADA

• §1981a punitive

• Class claims

• Negligent supervision

• Full recidivist allegations

Used harmful language: "damages up to $300,000."

--------------------------------------------------------------------------------

SECTION 4 — CONCLUSION

--------------------------------------------------------------------------------

# Casper Comparison Chart

**Allen ("Pro Se") vs. Attorney Cass T. Casper**

| Category | Allen (Pro Se) | Attorney Cass T. Casper |
|---|---|---|
| **Legal Training / Background** | Trained Master Plumber; no formal legal training; relied on counsel to correctly plead, protect claims, and guide strategy. | Licensed attorney with professional and ethical obligations; responsible for competent representation, accurate pleadings, and safeguarding client's claims. |
| **Access to Case Information** | Limited access; repeatedly requested updates, drafts, corrections, and strategic explanations; dependent on counsel to properly investigate facts and secure evidence. | Had full access to court rules, pleadings, discovery, deadlines, procedural tools, and professional knowledge required to protect counts and avoid harm. |
| **Control Over Amended Complaint (April 29–May 1, 2022)** | Requested review of draft **before filing**; identified errors immediately after viewing; asked for corrections (Battery, IIED, skilled trade classification, missing individuals, factual inaccuracies). | Filed amended complaint **without prior review** by client; refused or failed to correct errors within the permitted timeframe; omitted key counts (Battery, IIED) and key factual elements despite immediate notification from the client. |
| **Duty to Preserve Claims** | Sought to include all valid counts; alerted counsel when counts were missing or mislabeled. | Responsible for ensuring all viable claims were pled; **downplayed or omitted major counts**, including tort claims, and removed crucial damages pathways without legal justification. |
| **Settlement Proceedings** | Wanted transparent, fair negotiation; requested full count valuation; communicated impact of misconduct by Ford and prior counsel. | Interfered with settlement by asserting a **non-valid lien**; named in coordinated settlement terms requiring Plaintiff to share funds; his interference resulted in loss of preparation time and ability to negotiate properly. |
| **Litigation Preparation** | Pro Se at critical stages; sought access to experts, deposition opportunities, and corporate personnel; attempted to preserve evidence and advance discovery. | Restricted or discouraged key discovery; failed to demand necessary depositions; contributed to Plaintiff entering trial untrained due to his prior mishandling. |

| Category | Allen (Pro Se) | Attorney Cass T. Casper |
|---|---|---|
| Ethical Obligations | No duty other than to follow court rules; relied on counsel to act ethically and competently. | Owed full duties of loyalty, competence, communication, diligence, and avoidance of conflicts; violated these through misrepresentation, omission of claims, mis-amendments, and interference with settlement. |
| Communications / Transparency | Documented requests for corrections; pointed out factual errors; expressed concern regarding omitted counts; followed up repeatedly. | Failed to correct errors despite immediate notice; withheld or delayed information; coordinated threatening letters (Rule 11-style) with Keith Hunt instead of protecting client interests. |
| Impact on Case Outcome | Case lost at summary judgment due to procedural disadvantages, missing counts, obstructed discovery, and lack of counsel—not lack of merit. EEOC determination letter supported credibility. | Actions materially harmed Plaintiff's case, weakened damages structure, restricted discovery, removed essential counts, and contributed to a summary judgment loss unrelated to the merits. |
| Overall Position | Litigated in good faith; attempted to correct counsel's errors; sought to preserve full factual record and legal claims. | Actions benefitted Ford and coordinated counsel; created procedural disadvantages; introduced conflicts; and violated professional obligations, directly damaging the client's litigation posture. |

## Comparison of Allen Pro Se Amendment vs. Casper Amendments

This document outlines the weakening of Plaintiff Helen Allen's claims caused by the amendments filed by Attorney Cass T. Casper compared to the detailed and comprehensive Pro Se Amended Complaint filed on March 29, 2021 (Doc. 8).

SECTION 1 — COUNT STRUCTURE AND CLAIM REMOVALS

--------------------------------------------------

Pro Se Complaint (Doc. 8) included 7 counts:

- Battery

- Assault

- Intentional Infliction of Emotional Distress (IIED)

- Title VII Harassment

- Title VII Discrimination

- Race Discrimination (1981)

- Title VII Retaliation

Casper Amended Complaints (Docs. 42 & 43) reduced this to 4 counts:

- Title VII Harassment/Discrimination

- Title VII Retaliation

- Race Discrimination (Title VII)

- Section 1981

All tort claims (Battery, Assault, IIED) were removed, eliminating uncapped recovery.

SECTION 2 — KEY FACTUAL ALLEGATIONS REMOVED

---------------------------------------------

Removed by Casper:

- Forced medical retirement narrative.

- 2014 work injury & Workers' Compensation retaliation.

- Ongoing harassment in Skilled Trades.

- Supervisory retaliation specifics (Polk, Jones, Webber).

- Racist graffiti ("Niggers go home or die").

- Senate Resolution 1076 & EEOC conciliation context.

- Promotion denial to Safety Representative.

- Sharonville retaliation (forced out).

- Unsafe assignments imposed by supervisors.

SECTION 3 — SEXUAL HARASSMENT CLAIMS

-------------------------------------

Pro Se: Highly detailed daily harassment, sexual propositions, pornography, union corruption, physical intimidation.

Casper: Condensed and sanitized, removing severe and repetitive conduct that established "severe or pervasive" harassment standard.

SECTION 4 — SEX DISCRIMINATION CLAIMS

--------------------------------------

Pro Se included:

- Examples of male favoritism

- Job assignment disparities

- Unequal overtime

- White comparator promotions

Casper removed these comparators and promotion denials, weakening ability to show disparate treatment.

SECTION 5 — RACE DISCRIMINATION CLAIMS

----------------------------------------

Pro Se: racist graffiti, stereotypes, religious harassment (Muslim identity targeted), denied promotions, white comparators favored.

Casper: Eliminated severe racist acts and comparators, reducing §1981 punitive basis.

SECTION 6 — RETALIATION CLAIMS

------------------------------

Pro Se: Retaliation for reporting sexual harassment, retaliation after transfer, forced medical retirement, unsafe assignments.

Casper: Removed central facts tying retaliation to protected activity.

SECTION 7 — TORT CLAIMS REMOVED COMPLETELY

---------------------------------------------

Pro Se:

- Battery

- Assault

- IIED

Casper: All removed, eliminating uncapped damages and strongest jury-value claims.

SECTION 8 — DAMAGES REDUCED

----------------------------

Pro Se: punitive, special, medical, economic losses, emotional distress, physical injury.

Casper: limited to "compensatory damages up to $300,000" under Title VII, eliminating tort recovery.

OVERALL CONCLUSION

-------------------

Casper's amendments significantly weakened Plaintiff's civil rights and tort claims, reduced available damages, and removed decades of employment history that provided context and causation. The changes benefited Ford Motor Company and harmed Plaintiff's legal posture.

# EXHIBIT 4

# Amended complaint

Inbox



**Helen Allen** <wintresssssa@gmail.com>                    Fri, Apr 29, 2022,
                                                                    6:49 PM

to Cass

Cass

Did you finish the amended complaint?  If so I would like to see the changes made.

Thanks



**Cass Casper** <ccasper@dispartilaw.com>                    Fri, Apr 29, 2022,
                                                                    6:05 PM

to me

CAUTION: This email is a recipient that is outside of the organization.


Here you go - if you think anything needs to be changed, let me know.

Cass T. Casper, Esq.
Labor and Employment Attorney

DISPARTI Law Group
Ph: 312-506-5511 ext. 331
Fax: 312-846-6363
121 W. Wacker Dr., Suite 2300
Chicago, Illinois 60601
www.DispartiLaw.com
Confidentiality Notice:
This communication and any accompanying document(s) are confidential and privileged, pursuant to the American Bar Association Formal Opinion No. 99-413, dated March 10, 1999. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or be a waiver of any applicable privilege as to this communication or otherwise. If you have received this communication in error, please contact the sender at ccasper@DispartiLaw.com.
**One attachment**  ·  Scanned by Gmail



**Helen Allen <wintresssssa@gmail.com>**                    Sun, May 1, 2022,
                                                            10:23 AM

to Cass

Good morning Cass

I just finished reading the complaint.  Several mistakes.
I don't see any mention of the battery.  I agreed to omit the assault since I had no physical altercations I don't see a count for the battery or IIED I endured.  I see it is mentioned but no count is attached.

Page 2
#6. I am Skilled Trades Plumber/ Pipefitter never have I been classified as anything else.

Page 5.
I. Include Fred Jones, Stan Penkala

Page 6
r. Fred Jones Stan Penkala

Page 7
25. Flouretta Drummer, Alex Qweeny, Aaron Wynn, Katina McCoy, Brent Merrit-  Plant Manager

Page 10
c. Jim Larese-Coroporate-Labor Affairs Manager- Dearborn Mi.  He exposed me to my co workers as well who were not aware I had filed a EEOC charge.  When he exposed me I didn't have a case filed in the courts.  He put the bullseye on me that day.
k.
Plaintiff has many grievances that have not been addressed today. At least 5 I remember

Page 11
m. Stan Penkala, Natalie Dahringer, Katina McCoy, Herb Floures,

Page 13
f. her scarf- my hair is never exposed
I. Kyna  is light skinned black female who never complained.  She was granted a bribe with her bad work record and my record is still tarnished.

49. Brent Merrit- Plant manager.

A lot is missing.

Please explain.

Thanks

Helen



**Helen Allen** <wintressssssa@gmail.com>                    Thu, May 5, 2022,
                                                                  2:07 PM

to Cass

Cass

What is needed from me for the complaint to be amended properly?  I have a scheduled trip that will take me away from my documents for a few weeks. I assume my complaint needs to be amended prior to FMC response, due mid month.  Please provide me what is needed from my end before August 12, 2022.

Thanks

Helen

C

**Cass Casper** <ccasper@dispartilaw.com>                    Fri, May 6, 2022,
                                                                  6:08 PM

to me

CAUTION: This email is a recipient that is outside of the organization.

Here you go.  Adds in assault and IIED. I put in most of what you included below, but a couple I wasn't sure which paragraph you were referring to, so let's discuss on our call.

**Cass T. Casper, Esq.**
Labor and Employment Attorney

**DISPARTI** Law Group
**Ph:** 312-506-5511 ext. 331
**Fax:** 312-846-6363
121 W. Wacker Dr., Suite 2300
Chicago, Illinois 60601
www.DispartiLaw.com
Confidentiality Notice:
This communication and any accompanying document(s) are confidential and privileged, pursuant to the American Bar Association Formal Opinion No. 99-413, dated March 10, 1999. They are intended for the sole use of the addressee. If

you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or be a waiver of any applicable privilege as to this communication or otherwise. If you have received this communication in error, please contact the sender at ccasper@DispartiLaw.com.

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HELEN ALLEN,

Plaintiff,

v.

FORD MOTOR COMPANY,

Defendant.

Case No. 21-cv-00962

Judge Mary M. Rowland

## ORDER

Plaintiff Helen Allen filed suit against Defendant Ford Motor Company for employment discrimination and has now moved for leave to file a third amended complaint [53]. For reasons stated herein, Plaintiff's Motion [53] is granted in part and denied in part.

### I.   Background

Plaintiff's original complaint in this case was filed February 2021 after this case was severed from the *Van v. Ford Motor Co.* case.[1] Plaintiff amended her complaint in March 2021 [8], and then again in April 2022. [43]. In her four-count second amended complaint [43], she brings claims arising out of her employment at two Chicago area Ford plants and alleges gender and race discrimination, harassment based on gender and race and retaliation in violation of Title VII and race discrimination under 42 U.S.C. § 1981. Fact discovery in this case is set to close November 16, 2022. [51]; [58].

Ford filed a partial opposition to the motion to amend, objecting to Plaintiff adding three new Title VII claims. [60]. Plaintiff filed a reply brief *pro se*. [61].[2]

---

[1] In 2014, joined by other plaintiffs, Plaintiff filed a putative class action complaint against Defendant Ford Motor Company under Title VII of the Civil Rights Act of 1964 for sexual harassment. *Van v. Ford Motor Co.*, 14-cv-8708 (N.D. Ill. Nov. 3, 2014) (hereinafter *Van* Docket), ECF No. 1. Later, Allen moved to sever her claims from the *Van* case and to proceed *pro se. Van* Docket [572]; [579].

[2] Plaintiff was represented by counsel who sought leave to withdraw; the Court granted counsel's motion to withdraw on September 28, 2022. [55]; [58].

1

## II.  Standard

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend pleadings "when justice so requires." *See also Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) (noting that Rule 15(a)(2) takes a "liberal approach to granting leave to amend") (quoting *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018)).  Courts may, however, deny leave to amend "where there is a good reason to do so: 'futility, undue delay, prejudice, or bad faith.'" *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020) (quoting *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 417 (7th Cir. 2019)). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962). Ultimately, the "decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)).

## III.  Analysis

In her motion, Plaintiff explains that she seeks to add discrimination and retaliation claims that stem from her employment with Defendant in Ohio. She also seeks to add state law claims that were previously part of a case dismissed in the Southern District of Ohio (No. 1:19-cv-01012 (S.D. Ohio), the "Ohio Action").

As to the state law claims, Ford responds that it does not object to Allen amending to add Assault (Count 6), that was inadvertently omitted in her second amended complaint, or to adding Intentional Infliction of Emotional Distress (Count 7) for purposes of preserving it for appeal. Ford otherwise opposes Plaintiff's motion, arguing that (1) the new Title VII claims based on religious discrimination are time-barred; (2) Allen has unduly delayed in making the request; and (3) granting Allen's motion would prejudice Ford, as amendment would require further discovery and expense.

The Court agrees that the Title VII religious discrimination claims are time-barred. In Plaintiff's motion she argued that the "refiling is timely" based on a one-year savings statute under Illinois and Ohio state law. However the federal statute, 42 U.S.C. § 2000e-5, governs the limitations period for Plaintiff's Title VII claim. *See Rush v. Lock*, 19 F. App'x 416, 418 (7th Cir. 2001) ("When a plaintiff brings a claim in federal court that is subject to a federal, rather than a state, statute of limitations, a state saving statute does not apply."). Plaintiff also does not explain why she did not seek to add these claims earlier in the case. *See Enriquez v. U.S. Cellular*, No. 06 C 3135, 2007 WL 9813326, at *2 (N.D. Ill. May 3, 2007) (explaining that "[i]n deciding a motion to amend, a district court should consider whether the claim could have been added earlier").

2

In addition, fact discovery is set to close on November 16, 2022. As the court in *Finnerman v. Daimler Chrysler Corp.* explained, where the "motion to amend was filed near the close of the fact discovery period in this case," such timing "is disfavored in the Seventh Circuit." No. 16-CV-451, 2017 WL 4772736, at *3 (N.D. Ill. Oct. 23, 2017). "Defense of a new claim obviously will require additional rounds of discovery, in all probability interview of new witnesses, gathering of further evidence, and the identification of appropriate legal arguments." *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988). Allowing Plaintiff to add new federal claims at this juncture would be prejudicial to Ford.

In Plaintiff's reply [61] she argues that her counsel's filing of the second amended complaint [43] was "erroneous" and that her prior counsel "used excusable negligence in his lack of defending Plaintiff Allen's Counts in the time established by the Federal guidelines." [61 at 3]. She appears to argue that any timeliness issues should be excused because her counsel had all the necessary information before discovery began. This does not directly address any of Ford's arguments. While the Court construes Plaintiff's *pro se* filing liberally, the court "cannot fill the void by crafting arguments and performing the necessary legal research" for the pro se litigant." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). *See also Doherty v. City of Chicago*, 75 F.3d 318, 323 n.2 (7th Cir. 1996) (noting the "institutional concerns" with "impos[ing] on the court the obligation to make arguments for [a] party that the party has not made for itself").

In sum, the Court denies in large part Plaintiff's motion. "There must be a point at which a plaintiff makes a commitment to the theory of its case," *Parisi v. Wexford Health Sources, Inc.*, 2020 WL 247394, at *8 (N.D. Ill. Jan. 16, 2020) (quoting *Johnson v. Methodist Med. Ctr.*, 10 F.3d 1300, 1304 (7th Cir. 1993), *cert. denied*, 511 U.S. 1107 (1994)). However, the Court will allow Plaintiff to add the two state law counts in a third amended complaint.

## IV. Conclusion

For the stated reasons, Plaintiff's motion [53] is granted in part and denied in part. The Court will allow Plaintiff to file a third amended complaint that adds only the assault and intentional infliction of emotional distress counts. Plaintiff is not permitted to add Count 5 (religious discrimination and harassment), Count 8 (Title VII retaliation) or Count 9 (Title VII religious discrimination). Plaintiff shall file the third amended complaint on or before October 28, 2022. Telephonic status hearing set for 11/16/22 remains set.

3

ENTER:

Dated: October 18, 2022

MARY M. ROWLAND
United States District Judge

4

# EXHIBIT 6



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
EEOC National Toll Free: (800) 669-4000
EEOC National TTY: (800) 669-6820
Chicago Direct Dial: (312) 869-8000
Chicago TTY: (312) 869-8001
Administration Fax: (312) 869-8077
Enforcement/File Disclosure Fax: (312) 869-8220
Federal Sector Fax: (312) 869-8125
Legal Fax: (312) 869-8124
Mediation Fax: (312) 869-8060

EEOC Charge Number: 846-2013-24644 2nd Amended

Helen D. Allen
315 East Maple Drive
Glenwood, IL 60425

Charging Party

v.

Ford Motor Company
12600 South Torrence Avenue
Chicago, IL 60633

Respondent

Ford Motor Company
1 American Road
Dearborn, MI 48126

Respondent

## DETERMINATION

Under the authority vested in me by the Procedural Regulations of the Equal Employment Opportunity Commission (EEOC), I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII) and the Age Discrimination in Employment Act of 1967, as amended (ADEA).

The Respondent is an employer within the meaning of Title VII and the ADEA and all requirements for coverage have been met.

The Charging Party alleged that she and a class of employees were discriminated against based on their sex, female, in that they were subjected to sexual harassment and gender based harassment, and that they were further harassed and subjected to different terms and conditions of employment in retaliation for engaging in protected activity, in violation of Title VII.

The Charging Party further alleged that she and a class of employees were discriminated against based on their race, Black, in that they were subjected to racial harassment and different terms and conditions of employment and that they were further harassed and subjected to different

Page 2
Determination
EEOC Charge Number: 846-2013-24644 2nd Amended

terms and conditions of employment in retaliation for engaging in protected activity, in violation of Title VII.

Additionally, the Charging Party alleged that she and a class of employees were discriminated against based on their religion, Muslim, in that they were harassed and subjected to disparate treatment and that they were further harassed and subjected to disparate treatment in retaliation for engaging in protected activity, in violation of Title VII. Lastly, the Charging Party alleged that she and a class of employees were discriminated against based on their age, over 40 years old, in that they were harassed and subjected to disparate treatment and that they were further harassed and subjected to disparate treatment in retaliation for engaging in protected activity, in violation of the ADEA.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a class of employees based on their sex, female, in that they were subjected to sexual harassment and gender based harassment, in violation of Title VII.

I have further determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a class of employees based on their race, Black, in that they were subjected to racial harassment, in violation of Title VII.

Additionally, I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent retaliated against Charging Party and a class of employees for engaging in protected activity, by subjecting them to different terms and conditions of employment, including, but not limited to, reassigning them to less favorable job assignment and/or shifts, denying them overtime opportunities and/or transfers, subjecting them to discipline, and/or discharging them, in violation of Title VII.

This determination is final. When the Commission finds that a violation has occurred, it attempts to eliminate unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 C.F.R. Part 1601.26).

If the Respondent wishes to accept this invitation to participate in conciliation efforts, it may do so at this time by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by the Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Page 3
Determination
EEOC Charge Number: 846-2013-24644 2nd Amended

Should the Respondent have further questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage it to contact the assigned Commission representative. Should there be no response from the Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On Behalf of the Commission:

_2/20/15_
Date

Julianne Bowman
Acting District Director

# EXHIBIT 7

SEG

---

**SUMMARY OF LOSSES FOR HELEN ALLEN**

| TABLE | DESCRIPTION | ESTIMATE |
|-------|-------------|----------|
| ***** | ***************************** | *********** |
| | **EARNINGS** | |
| | NET EARNINGS & BENEFITS LOSS | |
| 7 | Annual Employment to age 70 | $4,205,537 |
| | ---------------------------------------- | |
| | **LOSS OF ENJOYMENT OF LIFE** | |
| | REDUCTION IN VALUE OF LIFE | |
| 10 | Lower impairment rating | $1,640,033 |
| 13 | Upper impairment rating | $2,733,406 |

The information on this Summary of Losses is intended to summarize losses under certain given assumptions.  Please refer to the report and the tables for all the opinions.

16

Smith Economics Group, Ltd. ▪ *312-943-1551*

# EXHIBIT 8



## OFFICE OF THE ATTORNEY GENERAL
### STATE OF ILLINOIS

**KWAME RAOUL**
ATTORNEY GENERAL

November 10, 2025

Helen Allen
9530 Pineview Rd.
Suffolk, VA  23437

Re: Gibson, Dunn & Crutcher
File No: 2025-CONSC-00217691

Dear  Allen:

The Consumer Protection Division of the Attorney General's Office has received your recent complaint.  The matter you described appears to fall under the authority of the agency named below. Therefore, we have sent your correspondence to that agency for its review.

Agency:

Attorney Registration and Disciplinary Commission
3161 W. White Oaks Drive, Ste. 301
Springfield, IL 62704

Sincerely,

ATTORNEY GENERAL
State of Illinois

*Geoffrey Keller*

Geoffrey Keller
Citizen's Advocate
Consumer Protection Bureau
geoffrey.keller@ilag.gov

500 South Second Street, Springfield, Illinois 62701 . (217) 782-1090 . Fax: (217) 782-7046
115 South LaSalle Street, Chicago, Illinois 60603 . (312) 814-3000 . Fax: (312) 814-3806
1745 Innovation Drive, Suite C, Carbondale, Illinois 62903 . (618) 529-6400 . Fax: (618) 529-6416

Individuals with hearing of speech disabilities can reach us by using the 7-1-1 relay service.

# EXHIBIT 9

*****Excerpts from Settlement Offer that included Casper/Disparti Law group******

Payment will be made in four separate checks or drafts: (1) the first made payable to the order of Disparti Law Group, P.A. in the amount of _____($___), for which Ford will issue I.R.S. Form 1099 to Plaintiff and Disparti Law Group, Disparti Law Group, P.A.

Disparti Law Group ("Disparti") hereby agrees to keep (i) the terms of this Agreement, including the total gross sum and all payment amounts described in paragraph 1, individually and collectively, and (ii) all settlement negotiations leading up to this Agreement, confidential and not to disclose any such information to any other person. Disparti further agrees to refrain from making, causing to be made, or participating in the making of any public announcements, press releases, or interviews concerning this settlement. Disparti hereby waives and releases any and all statutory or common law liens for attorneys' fees, expenses or costs that it may otherwise have against any payments made by Ford under this Agreement.

Initialed by Plaintiff: _____

9 of 9

For Disparti Law Group, P.A.:

_____    _____

Cass T. Casper

# EXHIBIT 10

# PLAINTIFF'S TIMELINE OF EVENTS (2014–2025)

*(Helen Allen v. Ford Motor Company / Hunt / Casper / Smith / Senger / Nemecheck)*

---

## 2014

- **Nov 3, 2014** – Plaintiff Helen Allen files federal lawsuit: *Allen v. Ford Motor Company*, Case No. **1:14-cv-08708**, N.D. Illinois.
- Represented by attorney **Keith Hunt** (Hunt Law Firm).

---

## 2015–2018

- Litigation continues under Hunt's representation.
- Plaintiff maintains claims including:
    - §1981 race discrimination
    - Hostile work environment
    - Battery
    - IIED
    - Retaliation
    - Harassment
    - Lost wages and punitive damages
- No claims dismissed during this period.

---

## 2019

- **August 2019** – Plaintiff transitions to **Pro Se** representation.
- Plaintiff continues prosecuting her claims independently.

---

## 2020

- Plaintiff continues discovery efforts as Pro Se.

- Plaintiff identifies key witnesses and issues critical to the case.

---

# 2021

- **March 22, 2021** – Plaintiff files **Pro Se Amended Complaint**, preserving all claims (Exhibit 1).
- Ford does **not** move to dismiss Plaintiff's counts.
- Plaintiff requests depositions of multiple corporate personnel; Ford objects.
- **Late 2021** –
  - Ford attorneys **Smith, Senger, Nemecheck** begin coordinated communications with Hunt (despite Hunt being terminated).
  - Hunt and Smith send the **coordinated cease-and-desist letters** (Feb 26–27 case timeline reference).
  - Plaintiff experiences increased pressure to accept a reduced settlement.

---

# 2022

## Casper's Representation

- **Early 2022** – Plaintiff retains attorney **Cass T. Casper** / Disparti Law Group.
- Plaintiff instructs Casper to maintain her existing counts and correct only typographical issues.

## Unauthorized & Defective Amendment

- **April 29, 2022** – Casper files an **unauthorized Amended Complaint**:
  - Removes §1981 claim
  - Removes IIED
  - Removes battery
  - Removes assault
  - Removes key witnesses
  - Changes Plaintiff's job classification
  - Weakens damages and removes factual allegations
  - Plaintiff was **not allowed to review** before filing
- Plaintiff immediately notifies Casper of errors by email/text (Exhibits 4 & 11).
- **May 1, 2022** – Plaintiff sends detailed list of mistakes; Casper refuses to correct within the required 14-day window.
- **Mid–2022** – Casper continues refusing to fix the pleading, abandons discovery, refuses to depose essential witnesses.

## Casper Withdrawal

- **Late 2022** – Casper withdraws after:
  - o Filing an untimely, frivolous corrective motion
  - o Creating an irreversibly defective record
  - o Leaving Plaintiff without discovery
- Judge Rowland states Casper's late correction attempt is **"frivolous"** (Exhibit 5).

# 2023

- Plaintiff continues Pro Se, now with a severely damaged case posture caused by defective pleadings and missing evidence.
- Ford moves for summary judgment relying on the weakened complaint and the absence of discovery.
- Plaintiff is forced into trial preparation without depositions or a proper complaint due to Casper's failures.

# 2024

- **2024** – Appellate process concludes; Plaintiff becomes fully aware of the extent of:
  - o Removed claims
  - o Discovery she was prevented from obtaining
  - o Defective pleadings
  - o Casper's insertion into settlement through void lien language
- Plaintiff receives AG referral and supporting letters (Exhibit 8).

# 2025

## Filing of Legal Malpractice Action

- **2025** – Plaintiff files *Allen v. Casper and Disparti Law Group*, Case No. **1:25-cv-10438**, asserting:
  - o Legal malpractice
  - o Breach of fiduciary duty
  - o Tortious interference
  - o Intentional infliction of emotional distress
- Defendants file a Motion to Dismiss.
- Plaintiff files full Opposition with exhibits and timeline.

# End of Timeline (2014–2025)

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Helen Allen,
 Plaintiff,

v.

Cass Casper,
 Defendant.

## EXHIBIT ___ – TEXT MESSAGE COMMUNICATIONS
## BETWEEN PLAINTIFF AND ATTORNEY CASS CASPER

Submitted in Support of Plaintiff's Opposition
to Defendant's Motion to Dismiss
Case No. 1:25-cv-10438

Exhibit Contents: Screenshots of text communications
demonstrating attorney delays, lack of action, and
misrepresentations made during representation.









**9:20**  .ıl 5G 🔋

Cass >

Ok

Jul 5, 2022 at 4:00 PM

Good afternoon
I am almost finished with my
interrogatories. Has their been
any documents shared so we
can amend my complaint?

Jul 6, 2022 at 2:43 PM

Good afternoon
Did the check for my sanctions
get turned in for last month? My
account does not show a
withdrawal
Thanks

It absolutely did. I will confirm
again

My paralegal walked it over

Thanks

Jul 20, 2022 at 12:21 PM

Good afternoon
Does the 7-22 date for written

+ iMessage 🎤















**May 23, 2022 at 11:06 AM**

Good morning

Rule 34 request
Instructions #3
SAC request needs to be a few years prior to my arrival in Chicago Jan 2012
Response #11
Time period should be Jan 2010 when I was in Dearborn Mi having discriminatory issues at Dearborn Truck Plant that lead me to Chicago.

**May 27, 2022 at 8:58 AM**

Good morning
Was the changes made to Rule 34 request?
I haven't read FMC response to my amended complaint because for me it's a waste of my time. I will read their response once we have accurately amended my complaint.

**Jun 10, 2022 at 11:01 AM**

+ iMessage



**Who is this?**

Helen Allen

May 2, 2022 at 10:11 AM

**Will call you back**

May 6, 2022 at 9:02 AM

Good morning
Can you please give me an update on the progress of my amended complaint? I know I'm not your only client and things get busy. You told me to trust you with my case and I did. For me trust is hard. Disappointed that I didn't see the complaint before it was originally submitted some of this could have been avoided.

May 6, 2022 at 10:06 AM

**Can we talk at 4:30 pm today? I'll make all the changes and additions before then and send to you**

May 6, 2022 at 11:08 AM

+ iMessage







**Cass** >

Jun 10, 2022 at 11:01 AM

**Can I call you later?**

For sure

Jun 13, 2022 at 10:20 AM

👀
I left a message on Friday. I'd like an update since we have not been in contact for weeks and June 24 is a deadline.
Do you have another lawyer who can assist with my case?
It's seems that you have a lot to manage and I don't need my case being overlooked because you have too much on your plate. My comfort with you is not level at this moment. Don't want the thoughts I'm having to surface.

**Want to have a zoom meeting this week and discuss? How about tomorrow? We don't have anything due until 6/24 when the initial disclosures are due**

Okay

iMessage







**9:22**      .ıl 5G 🔋



**Cass** ›

Sep 8, 2022 at 8:26 AM

Good morning
I have a few questions that I
would like to ask when you get a
moment. I am concerned about
my case and the timelines of the
depositions needed to be
scheduled.

Sep 9, 2022 at 3:27 PM

Good afternoon
Can you send me a copy of the
amended complaint?

Sep 16, 2022 at 9:59 AM

Good morning
After long consideration,
It is time for us to part ways and
for me to return to Pro Se status.
Please inform Judge Rowland
and FMC of my decision
My request for all three
transcripts should be back in
place as well.

Sep 16, 2022 at 11:53 AM

**Ok. I sent out an email just**





**Cass** ›

Ok. I sent out an email just asking for further confirmation. If that's your decision, that's your absolute right, and I will withdraw and send everything over. Would you mind responding to the email? At that point I'll prepare papers as you request.

Sep 18, 2022 at 7:07 PM

Is it too late to ask for a conference?
I will more than likely dismiss the case when I get with Judge Rowland

No not at all.

Can you inquire before you withdraw?

Sep 19, 2022 at 9:49 AM

I can ask. We need to put your mailing address on that party contact sheet. Which address is correct?

iMessage



**9:21** ⋅⋅ 5G 🔋

**Cass** ›

Aug 29, 2022 at 9:34 AM

Good morning Cass
Has the case been amended?

Aug 31, 2022 at 12:27 PM

Good afternoon
When will the case will actually
be amended?
Do you have the tentative dates
for deposition?  I would like to be
present/included in all
depositions.

Aug 31, 2022 at 1:34 PM

All on my radar! Working another
case. Can we talk tomorrow at
10 and go over depos to
schedule and doing the
amendment? Let's file tomorrow
after we talk. Thag work?

Sounds good

Sep 1, 2022 at 11:15 AM

Good morning

Running late. I'm sorry Helen.

+ iMessage



9:21    ..ll 5G 🔋

< 1    CC    📹

Cass >

Okay

Sep 6, 2022 at 10:20 AM

Good morning
What time can we have a
conversation?

This afternoon? Maybe after 4?

Ok

Sep 6, 2022 at 4:50 PM

I put the Ohio counts back in.
Can you check your email and
take a look at those? Very end of
new complaint. Confirm for
accuracy

Just read..sufficient

Ok

Sep 8, 2022 at 8:26 AM

Good morning
I have a few questions that I
would like to ask when you get a
moment. I am concerned about
my case and the timelines of the

+    iMessage    🎤





**9:22**  .ıl 5G 🔋

< 1️⃣   **CC**  📹

Cass >

Sep 8, 2022 at 8:26 AM

Good morning
I have a few questions that I would like to ask when you get a moment.  I am concerned about my case and the timelines of the depositions needed to be scheduled.

Sep 9, 2022 at 3:27 PM

Good afternoon
Can you send me a copy of the amended complaint?

Sep 16, 2022 at 9:59 AM

Good morning
After long consideration,
It is time for us to part ways and for me to return to Pro Se status.
Please inform Judge Rowland and FMC of my decision
My request for all three transcripts should be back in place as well.

Sep 16, 2022 at 11:53 AM

**Ok. I sent out an email just**

➕  iMessage  🎤



**9:22**  ...|| 5G ▭

‹ ❶          **CC**          ▭◻

**Cass** ›

Ok. I sent out an email just asking for further confirmation. If that's your decision, that's your absolute right, and I will withdraw and send everything over. Would you mind responding to the email? At that point I'll prepare papers as you request.

Sep 18, 2022 at 7:07 PM

> Is it too late to ask for a conference?
> I will more than likely dismiss the case when I get with Judge Rowland

No not at all.

> Can you inquire before you withdraw?

Sep 19, 2022 at 9:49 AM

I can ask. We need to put your mailing address on that party contact sheet. Which address is correct?

＋  ( iMessage