THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HELEN ALLEN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 25 C 10438 |
| | ) | |
| CASS CASPER and DISPARTI LAW | ) | Chief Judge Virginia M. Kendall |
| GROUP, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Cass Casper and Disparti Law Group move to dismiss *pro se* Plaintiff Helen Allen's First Amended Complaint. (Dkt. 22). In this diversity action under Illinois law, Allen's complaint arises from alleged legal malpractice when Casper represented Allen in a prior lawsuit: *Allen v. Ford Motor Company*, No. 21 C 962 (N.D. Ill. 2021) (J. Rowland) ("*Ford II*"). For the reasons below, the Court grants Defendants' motion to dismiss.

## BACKGROUND

The following is from Allen's First Amended Complaint and the Court taking judicial notice of *Ford II* as well as *Van et al v. Ford Motor Company*, No. 14 C 8708 (N.D. Ill. 2014) (J. Pacold) ("*Ford I*"). (Dkt. 13); *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023). This lengthy and troubled story begins over a decade ago with Allen's dispute with Ford Motor Company. (*Ford I*, Dkt. 1). While working as a plumber and pipefitter at Ford's assembly plant in Chicago, Allen alleges that she was discriminated against because she is a Black, Muslim female. (*Ford II*, Dkt. 130 at 2). This alleged discrimination caused her to seek legal action, joining a class action complaint in 2014 against Ford Motor Company alleging various violations under Title VII

as well as state claims for battery, assault, and intentional infliction of emotional distress. (*Ford I*, Dkts. 1, 59). In that proceeding, Judge Coleman dismissed Allen's count for intentional infliction of emotional distress as preempted by the Illinois Workers Compensation Act. (*Id.*, Dkt. 53 at 13). The case was reassigned to Judge Dow who denied Plaintiffs' motion for class certification twice. (*Id.*, Dkts. 306, 418). The case was then reassigned to Judge Pacold who then severed Allen's claims from *Ford I*, but permitted Allen to participate in settlement negations. (*Id.*, Dkt. 434). Those did not go well. During them, Allen asserted "frivolous, malicious, and egregious allegations that were unrelated to the merits of her case" and made "offensive and baseless accusations to Judge Cummings" (who supervised settlement negotiations). (*Id.*, Dkt. 704). As settlement negotiations were fruitless, Judge Pacold terminated Allen from the class on February 9, 2021. (*Id.*, Dkt. 585).

Allen's severed claims were reassigned to Judge Rowland who ordered Allen to file an amended complaint. (*Ford II*, Dkt. 3). Allen, proceeding *pro so*, did so, filing her First Amended Complaint on March 29, 2021. (*Id.*, Dkt. 8). Her First Amended Complaint had seven counts, including Count VI for assault and Count VII for intentional infliction of emotional distress that was only "Preserved For Appeal." (*Id.* at 13) (capitalization removed). Allen proceeded *pro se* for nearly the next six months. During this time, Judge Rowland sanctioned Allen for her conduct during settlement negotiations. (*Id.*, Dkt. 37 at 2). Judge Rowland explained that Allen sent a "highly insulting" email to Judge Cummings, accusing "Judge Cummings of: (1) misleading her about the facts of her case; (2) leading . . . plaintiffs into accepting agreements that were subpar at its best; (3) allowing those who slept around to be over compensated; and (4) fighting for liars, whores, thieves, and women who admitted they voluntarily shared their bodies more aggressively than he did for Allen." (*Id.*) (cleaned up). The Court found that Allen's "behavior reflect[ed] a

stunning level of vitriol, vulgarity, and disrespect that amounts to an abuse of the judicial process . . . meriting sanctions." (*Id.* at 3) (quotes omitted).

Defendant Casper made his appearance on September 21, 2021. (*Id.*, Dkt. 29). About half a year later, Allen filed her Second Amended Complaint on April 28, 2022. (*Id.*, Dkt. 43). In Allen's Second Amended Complaint, she dropped her Count VI for assault and Count VII intentional infliction of emotional distress. (*Id.*) Following this, Ford Motor Company filed its answer (*id.*, Dkt. 45), and the parties submitted a joint status report on August 25, 2022, indicating that the parties served discovery but had taken no depositions and a settlement conference would not be productive at that time. (*Id.*, Dkt. 50). On September 12, 2022, Allen moved to amend and file a Third Amended Complaint to add back counts for assault and IIED. (*Id.*, Dkt. 53). It appears that the new assault count was not based on the same conduct that occurred in Chicago (from Allen's First Amended Complaint) but from "state law claims that were previously a part of a case dismissed in the Southern District of Ohio." (*Id.* at 2). One week later, Defendants moved to withdraw from their representation of Allen. (*Id.*, Dkt. 55). About one month after that, Judge Rowland granted Allen's motion to add the assault and IIED counts. (*Id.*, Dkt. 62).

Allen proceeded with the remainder of the case *pro se* and in February 2023, Ford Motor Company filed a motion for summary judgment. (*Id.*, Dkt. 79). Ford Motor Company argued that Allen lacked evidence for her discrimination claims and the Illinois Workers' Compensation Act preempted her assault claim. (*Id.*, Dkt. 80). Ford also noted that Allen's IIED count had already been dismissed in *Ford I* and was included in the complaint for purposes of appeal only. (*Id.* at 1, n.1) (citing *Ford I*, Dkt. 53, *Ford II,* Dkt. 62 at 2). Allen's opposition was severely deficient: she violated L.R. 56.1(e)(3), (d)(2), provided no statement of facts to dispute Ford's facts, and provided no citations or authority. (*Id.*, Dkt. 88); (*see also id.*, Dkt. 130 at 3-4).

On September 8, 2023, Judge Rowland granted Ford Motor Company's motion for summary judgment. (*Id.*, Dkt. 116). Judge Rowland accepted as undisputed and deemed admitted Ford's facts and found that Allen's positions lacked admissible evidence or support. (*Id.*) Judge Rowland found that Allen's claims failed on the merits. Allen's IIED claim was already dismissed from *Ford I*; Allen never disputed this. (*Id.* at 7, n.3). Judge Rowland further found that the Illinois Workers' Compensation Act preempted Allen's assault count. (*Id.* at 10-11).

One year, 11 months, and 21 days later, Allen filed her complaint in this case. (Dkt. 1). Allen's case boils down to this: when Casper filed Allen's Second Amended Complaint on April 28, 2022—dropping Allen's assault and IIED counts—Casper committed legal malpractice because he did so "without consulting" Allen. (Dkt. 13, ¶¶ 11-13). Allen alleges that she "discovered the removal of her claims only after reviewing the court docket and questioning Casper about the filing." (*Id.*, ¶ 14). Allen terminated Casper on September 15, 2022 "citing neglect and failure to communicate." (*Id.*, ¶ 16). Casper allegedly "failed to advise" Allen that "he was under ARDC investigation for altering documents" and had been "disciplined for misconduct" resulting "in suspension." (*Id.*, ¶ 15). Lastly, Allen claims that, "after he was no longer authorized to act as counsel," Casper "continued to interfere with" Allen's "ongoing matters, including a proposed settlement offer" to Ford Motor Company. (*Id.*, ¶¶ 16-18).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court

will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

## DISCUSSION

### I. Legal Malpractice

#### a. Statute of limitations

Allen filed her complaint on August 29, 2025. (Dkt. 1). Defendants contend that Allen was aware of the conduct giving rise to her malpractice claim in April 2022, when she discovered the removal of the counts or, at the very least, when Allen fired Casper in September 2022, and so Allen's complaint is barred by the 2-year statute of limitations. (Dkt. 23 at 10-11). In her opposition, Allen asserts that she "did not discover Defendant's hidden errors . . . until after the appellate dismissal in 2024." (Dkt. 26 at 4). Allen contradicts herself by attaching her texts with Casper showing that she discovered the removal of the counts on May 19, 2022. (*Id.* at 100).

"[I]t is appropriate to dismiss a complaint for failure to state a claim based on the affirmative defense of untimeliness only 'when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations.'" *Chowaniec v. City of Chicago*, 2023 WL 4234398, at *2 (7th Cir. June 28, 2023) (quoting *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011)). As the statute of limitations is an affirmative defense, Allen's complaint "need not anticipate or overcome" it. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Rather, dismissal based on an affirmative defense is only appropriate "when the plaintiff effectively pleads

herself out of court by alleging facts that are sufficient to establish the defense." *Id.* Claims for legal malpractice under Illinois law are subject to a "two-year statute of limitations[.]" *Concepts Design Furniture, Inc. v. FisherBroyles, LLP*, 2023 WL 2728816, at *3 (7th Cir. Mar. 31, 2023) (citing ILCS 5/13-214.3(b)). The "Illinois statute of limitations incorporates the so-called 'discovery' rule, which 'delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused.'" *Id.* (quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994)); *Snyder v. Heidelberger*, 953 N.E.2d 415, 418 (Ill. 2011).

"The statute of limitations for a legal malpractice claim does not begin to run when the attorney allegedly commits a negligent act but only when the plaintiff realizes an injury as a result of that negligence." *Zweig v. Miller*, 2020 IL App (1st) 191409, ¶ 30 (citing *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 90 (1995)). "To be considered injured, a legal client must suffer a loss for which he may seek monetary damages." *Id.* (citing *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005)). "Generally, the legal client's loss for which he may seek damages will not occur until he has suffered an adverse judgment, settlement, or dismissal of the underlying action caused by the attorney's alleged negligence." *Id.* (citing *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 356 (1998)); *accord Suburban Real Est. Servs., Inc. v. Carlson*, 2020 IL App (1st) 191953, ¶ 34 ("The statute of limitations on [Plaintiff's] legal malpractice claim began to accrue when the trial court in the underlying case entered judgment against him"). "However, a malpractice claim can accrue before an adverse judgment if it is plainly obvious that the plaintiff has been injured as the result of professional negligence or where an attorney's neglect is a direct

cause of the legal expense incurred by the plaintiff." *Id.* (cleaned up) (citing *Estate of Bass v. Katten*, 375 Ill. App. 3d 62, 70 (2007)).

There is little doubt that Allen knew of the conduct for her claim—the removal of the assault and IIED counts—more than two years before she filed her complaint. The weight of authority does not support dismissal under these circumstances, however. "Illinois courts have frequently recognized, either expressly or implicitly, a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Lucey v. L. Offs. of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 356 (1998) (collecting weight of authority holding same); *Zweig*, 2020 IL App (1st) 191409, ¶ 30 ("Generally, the legal client's loss for which he may seek damages will not occur until he has suffered an adverse judgment, settlement, or dismissal of the underlying action caused by the attorney's alleged negligence."). It is undisputed that the Court in *Ford II* did not issue its ruling on summary judgment until September 8, 2023. (*Ford II*, Dkt. 116). Thus, because Allen filed her complaint 1 year, 11 months, and 21 days after the summary judgment order, her claim is facially timely unless her injury was "plainly obvious." *Zweig*, 2020 IL App (1st) 191409, ¶ 30.

The alleged injury here is not plainly obvious. After Casper filed Allen's Second Amended Complaint, the parties continued on for months with discovery and Allen later moved to file a Third Amended Complaint to add new counts in addition to counts for assault and IIED. (*Ford II*, Dkt. 53). Judge Rowland granted that motion to add back counts for assault and IIED. (*Id.*, Dkt. 62). Accepting that Allen apparently discovered the issue in May, she nevertheless proceeded through months of discovery, had the opportunity to amend her complaint, took that opportunity, and then continued on with the litigation with both an assault and IIED count. At no point until

Judge Rowland granted the motion for summary judgment was there a clear or obvious injury for which she may have sought monetary damages. Indeed, it is not even clear that the assault count Allen added in the Third Amended Complaint is based on the same set of facts as from the First Amended Complaint. (*See id.*, Dkt. 53) (explaining that assault count related to a separate proceeding in Ohio). If it is not, then Allen knowingly chose to *not* include her original count for assault back in on amendment, meaning she likely suffered no injury at all. At any rate, "[t]his is not a case where it is plainly obvious, prior to any adverse ruling against the plaintiff, that he has been injured as the result of professional negligence." *Lucey v. L. Offs. of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 358 (1998) (collecting cases where injury was "plainly obvious"); *compare Jones v. L. Offs. of Jeffery M. Leving, Ltd.*, 2023 IL App (1st) 211667-U, ¶ 65 (finding claim for legal malpractice time-barred using date of order as triggering date).

### b. Merits

Allen alleges that Casper committed legal malpractice because he (1) removed valid claims without Allen's consent, (2) failed to communicate material developments to Allen, and (3) concealed disciplinary proceedings from Allen, that impacted his ability to practice law. (Dkt. 13, ¶¶ 21-23). Allen provides virtually no facts to support these allegations.

Defendants contend that Allen's claim is facially deficient because Allen failed to plausibly "allege that, but for Casper's negligence, [Allen] would have been successful in" *Ford II*. (Dkt. 23 at 7). Defendants explain that Allen's IIED count was dismissed in *Ford I*, and that Allen put it in her First Amended Complaint "for purposes of appeal only." (*Id.* at 9); (Dkt. 8 at 13) (pleading IIED count as "Preserved for Appeal") (capitalization removed). Defendants also note that the assault and IIED counts that Casper removed from Allen's Second Amended Complaint were added back in Allen's Third Amended Complaint. (*Id.* at 8). When ruling on Ford Motor

Company's motion for summary judgment, Defendants note that Judge Rowland found Allen's assault claim preempted by the Illinois Worker's Compensation Act. (*Id.* at 9). Defendants contend that Allen's second argument, that Casper failed to communicate material developments, fails for the same reason: Allen failed to plausibly allege that Casper's actions were the "but for" cause of Allen's loss in *Ford II*. (*Id.*) Defendants contend that "Allen's failure to establish any evidence" to support her claims is "not attributable to Casper" and that Allen's "claims were still viable and discovery was still ongoing when [Allen] fired Casper." (*Id.* at 10). Allen could have sought new counsel or undertook "additional discovery efforts to support her claims," but she did not; because of this, Defendants claim that "Allen's own failure to prosecute her claims while they were still viable cannot be the basis of a malpractice action against Casper." (*Id.*)

"A claim for legal malpractice under Illinois law requires '(1) an attorney-client relationship, (2) a negligent act or breach, (3) proximate cause, and (4) damages.'" *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 726 (7th Cir. 2025) (quoting *Hefferman v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006)); *Webb v. Damisch*, 842 N.E.2d 140, 146 (2005). "'The proximate cause element of this claim,' Illinois courts have emphasized, 'requires that the plaintiff must plead facts sufficient to show that but for the attorney's malpractice, the client would have been successful in the undertaking the attorney was retained to perform.'" *Id.* (quoting *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 155 (2000)).

Casper's act of filing the Second Amended Complaint without the assault and IIED counts was not the "but for" cause of Allen's failures in *Ford II*. *Id.*[1] The fault lies with Allen alone. It is undisputed that after Allen fired Casper, she proceed *pro se* for the remainder of the case. (*See* Dkt. 23 at 3-6). At all times she could have—but did not—seek out new representation. This

---

[1] The parties' only dispute the causation prong and so the court does not address whether this was a negligent act or a breach.

decision proved fatal. Allen also failed to follow the rules. She violated local rule Local Rule 56.1—causing all of Ford Motor Company's facts to be deemed admitted. (*Ford II*, Dkt. 116 at 2). Judge Rowland found that "Allen's response to Ford's 56.1 statement of facts [did] not properly dispute *any* of Ford's stated facts" because "Allen [did] not cite to *any* record evidence" and did "not state *any* reason for disputing a fact." (*Id.*) (emphasis added).

Allen's filings were also improper and ineffective. (*Id.*) Judge Rowland found that "Allen submitted 44 exhibits totaling 1,050 pages" but failed to "properly cite to this evidence" or "to any exhibit number" making it "unclear if the material she cite[d] was filed on the docket." (*Id.* at 2-3). Judge Rowland explained that "the Court is not obligated to sift through hundreds of pages of documents to try to find potentially relevant evidence and arguments favoring Allen" and, because of this, the court refused to "consider Allen's 'New Evidence.'" (*Id.* at 3). Allen cannot plausibly or credibly claim that Casper was the but for cause for Allen violating Local Rule 56.1 when Allen made such egregious errors on summary judgment. Allen's case was doomed before the court even got to the merits of her positions—which fare no better. (*Id.*)

Turning to the merits calcifies the Court's findings. Start with IIED. This was not even a live count in the case. Indeed, Judge Rowland did not address "Allen's intentional infliction of emotional distress claim" because it "was dismissed in the previous litigation" (*Ford I*, Dkt. 53) "and was included in Allen's complaint for purposes of appeal only." (*Ford II*, Dkt. 116 at 7 n.3) Allen did "not contest this in her response" to Ford Motor Company's motion for summary judgment. (*Id.*) She waived it. (*Id.*); *Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co., S.I.*, No. 22-1082, 2026 WL 574106, at *4 (7th Cir. Mar. 2, 2026) (a litigant "'may waive [an] issue or argument in many ways,' including 'by failing to raise the issue or argument in the district court, either at all or in a timely fashion'") (quoting *Bradley v. Village of University*

*Park*, 59 F.4th 887, 897 (7th Cir. 2023)). "This rule applies in full force when a litigant fails to advance an argument at summary judgment and then presses it on appeal." *Id.* (quoting *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments . . . not raised in its response to the moving party's motion for summary judgment.")).

In Allen's opposition to Defendant's motion to dismiss, she claims that "[i]n Krause v. Meyers, 200 Ill. App. 3d 782 (1990), the court recognized that unauthorized alteration of a client's claims constitutes actionable malpractice because it deprives the client of the right to control the objectives of the representation" and so Casper's removal of Allen's IIED claim "without Plaintiff's permission . . . falls squarely within the type of unauthorize conduct identified in Krause and independently supports liability." (Dkt. 26 at 9). The problem with this assertion is that "Krause" did not identify any conduct—"Krause" is not a real case. It's an AI hallucination and a material misrepresentation to the Court. And not the first one either. *See infra* at 19-21 (discussing Allen's Rule 11 violations). These failures are underscored by the fact that the Seventh Circuit did not even consider Allen's IIED claim when it reviewed Allen's appeal. (*Ford II*, Dkt. 130 (Seventh Circuit not discussing IIED and affirming dismissal)). At bottom, there is no information in the record that "but for" Casper's conduct Allen would have succeeded on her IIED claim. *Signal Funding*, 136 F.4th at 726.

Allen's allegation about her assault count is equally deficient. Even though it is a core allegation in her complaint, Allen does not address this issue in her opposition save one passing reference to the AI hallucinated case "Krause." (Dkt. 26 at 9). Since "Krause" is a figment of AI imagination, Allen's position is frivolous. Even construing Allen's *pro se* filing as liberally as allowed, the Court fails to see how Allen was injured by Casper removing a frivolous claim from

her *pro se* complaint. When a plaintiff files claims against her employer based on an intentional injury, the Illinois Workers Compensation Act considers the injury "accidental" and preempts the claim unless the plaintiff can show that their employer directed or expressly authorized the acts that caused the injury. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). Allen's complaint contained no factual allegations that Ford expressly directed or authorized its employees to assault Allen. (*See* Dkt. 8 at 13). Courts routinely dismiss claims like this. *See Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 323-24 (7th Cir. 1992) (the IWCA generally preempts common law torts based on assaults); *Doyle v. Cap. One Nat'l Ass'n*, 2019 WL 4750308, at *7 (N.D. Ill. Sept. 30, 2019) ("Because Capital One did not expressly authorize Jannush's conduct, the injury was accidental, and the IWCA precludes Doyle's assault claim."); *Sacramento v. City of Chicago*, 2010 WL 2740305, at *12 (N.D. Ill. July 12, 2010); *Hamilton v. Spraying Sys., Inc.*, 2003 WL 21878720, at *4 (N.D. Ill. Aug. 7, 2003). Judge Rowland did just that at summary judgement. (*Ford I*, Dkt. 116 at 10-11). The Seventh Circuit agreed. (*Id.*, Dkt. 130) ("Allen concedes that Ford did not authorize someone to assault her but maintains that Ford 'played a pivotal role in fostering an environment where [assaults were] allowed to persist.' But she does not develop this argument with references to record evidence or legal authority.") (citing *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990)).

Allen's remaining two positions why the Court should not dismiss her count for legal malpractice are based on her allegations that Casper failed to communicate material developments to her and concealed his disciplinary proceedings from her. Neither of these are relevant to whether Casper's conduct was the "but for" cause of Allen's failure in *Ford II. Supra* at 9-12. Allen has presented no facts explaining how, but for these acts, Allen would have ultimately succeeded in her case against Ford Motor Company. Judge Rowland's summary judgment order confirms that

12

none exist. (*Ford II*, Dkt. 116). Allen's failures were clear, severe, and directly attributable to her own mistakes during summary judgment briefing. Allen provides the Court no basis to find that Casper's failure to communicate any other case updates to her was the but for cause of Allen's failures. Allen's complaint is skeletal and wholly unsupported. (*See* Dkt. 13 ¶¶ 11-19).

As for Casper's allegedly hidden disciplinary proceedings, the Court has taken judicial notice of Casper's ARDC case (2022PR00024) but it too poses no relevance. There, while representing a group of employees in a federal civil rights lawsuit, Casper called one of the defendants he knew was represented by counsel and discussed the case. He then later falsely stated that he made no such call, altered his phone records to hide the fact that he did, sent those altered records to the defendants' attorney, and then filed the altered records—along with a sworn declaration falsely claiming that they were accurate—with the court. The ARDC suspended Casper effective April 11, 2023—months after Allen terminated him. Allen fails to tie this conduct to the alleged legal malpractice or but for cause of her failures in *Ford II*. For all these reasons, the Court grants Defendants' motion to dismiss Allen's claim for legal malpractice (Count I).

## II. Breach of Fiduciary Duty

Defendants contend that Allen's claim for breach of fiduciary duty should be dismissed because it is premised on the same facts as Allen's legal malpractice count and is therefore duplicative. (Dkt. 23 at 11-12). Allen counters that "Illinois allows separate fiduciary duty claims where conduct involves dishonesty, concealment, or self-dealing." (Dkt. 26 at 5) (citing *In re Estate of Halas*, 209 Ill. App. 3d 333 (1991)).

"To prevail on a claim for breach of fiduciary duty, plaintiffs must allege and ultimately prove (1) the existence of a fiduciary duty, (2) breach of the fiduciary duty, and (3) that such breach proximately caused the injury of which the party complains." *Wolfson v. Dugout Northbrook, LLC*,

2025 IL App (1st) 232257, ¶ 70 (citing *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 47)); *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 661 (7th Cir. 2024). "A claim for breach of fiduciary duty, when the source of the duty is the attorney-client relationship, is no different than a claim of legal malpractice. . . . In fact, when such a claim involves the same operative set of facts and the same resulting injury, 'the breach of fiduciary duty claim is duplicative of the malpractice claim and should be dismissed.'" *PBKM, LLC v. Kutak Rock, LLP*, 2024 IL App (1st) 230033, ¶ 117 (quoting *Pippen v. Pedersen & Houpt*, 2013 IL App (1st) 111371, ¶ 23)); *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004). "But not every act of legal malpractice is also a breach of a fiduciary duty. In a negligence claim for legal malpractice, the plaintiff must prove the defendant attorney breached his duty to 'exercise a reasonable degree of care and skill in representing [the client].'" *Kormi v. Choate*, 2022 WL 2715847, at *2 (N.D. Ill. July 13, 2022) (quoting *Pippen v. Pedersen & Houpt*, 2013 IL App (1st) 111731, ¶ 21)). "In contrast, an attorney breaches a fiduciary duty when, 'in the course of his professional dealings with a client, [he] places personal interests above the interests of the client.'" *Id.* (quoting *Doe v. Roe*, 289 Ill. App. 3d 116, 122 (1997)).

The Court must construe Allen's complaint liberally as she is proceeding *pro se*. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). Allen's allegations for breach of fiduciary duty merely restate the elements with no additional facts. (Dkt. 13, ¶¶ 25-29). Liberally construing Allen's complaint, these allegations are duplicative of her allegations for legal malpractice and are dismissed. (*See id.*, ¶¶ 11-19, 25-29); *PBKM, LLC*, 2024 IL App (1st) 230033, ¶ 117; *Hoagland*, 385 F.3d at 744. After Allen's prayer for relief, however, Allen added a new section titled "January 2022 Correspondence Confirming Ethical Breach and Neglect." (*Id.*, ¶¶ 44-49). In this section Allen alleges that she sent Casper a written communication "[o]n or about January 12, 2022 . . . regarding

his handling of Plaintiff's case, his continued contact with former counsel Keith Hunt, and his current representation of other former Ford Motor Company . . . plaintiffs." (*Id.*, ¶ 44).[2] Allen claims Casper breached his fiduciary duty by misrepresenting that "he would not represent" other Plaintiffs against Ford Motor Company and refusing to "obtain and release transcripts" which he did to protect his livelihood and professional ties with attorneys and judges. (*Id.*, ¶¶ 46-47).

A breach occurs "[w]hen, in the course of his professional dealings with a client, an attorney places personal interests above the interests of the client[.]" *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 351-52 (2000). It is unclear how a communication in January 2022— nine months before Casper made an appearance in this suit—regarding his representation of other clients shows that he placed his personal interests above Allen's. It is also unclear if Casper was representing Allen in January 2022—there are no allegations of when Defendants' representation began.

A closer look into Allen's allegations concerning the "transcripts" and Casper allegedly putting his professional ties over her interests shows that they are not rooted in breach of fiduciary duty. These are the transcripts from the hearings where Allen made racist and improper comments towards opposing counsel and Judge Cummings, causing Judge Rowland to sanction Allen. (*Ford II*, Dkt. 37). Allen has repeatedly attempted to retrieve these transcripts in multiple proceedings— and every Court has denied this request as improper, irrelevant, and in bad faith. (*See, e.g.*, *Ford I*, Dkt. 704) ("Allen now requests the sealed transcripts from when her case was before this court. Allen has provided no legitimate basis for the request. She explains that her purpose in seeking the transcripts is to facilitate further investigation of the same frivolous allegations. The transcript . . . has no apparent relevance, potential relevance, or possibility that it could lead to the discovery of

---

[2] Keith Hunt was counsel of record for Plaintiffs in *Ford I*. (*See Ford I*, Dkt. 3) (appearance for Keith Hunt).

information relevant to the merits of either this case, Case No. 14-cv-08708, or Case No. 21-cv-00962."); (*Ford II*, Dkt. 65) ("Plaintiff's motion for sealed transcripts 63 is denied. Plaintiff seeks transcripts from another case pending in this district, *Van et al., v. Ford*, 14-CV-8708."). Allen's count for breach of fiduciary duty (Count II) is dismissed.

## III.   Tortious Interference with a Prospective Economic Advantage

Defendants contend that Allen's claim for interference with a prospective economic advantage must be dismissed because she failed to allege a "sufficiently concrete business expectancy" or that she had "an actual settlement offer." (Dkt. 23 at 13). In her opposition Allen claims that she had "active settlement negotiations," "draft settlement agreements," and "Evidence Ford wrote Casper into the settlement." (Dkt. 26 at 5).

"To state a cause of action for intentional interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Younge v. Berman*, 2025 IL App (2d) 240354, ¶ 20 (cleaned up). "When considering such a claim, the focus is on the conduct of the party interfering with the expectancy. It is insufficient for a plaintiff to merely allege that a defendant indeed interfered with a business expectancy; the plaintiff must instead allege that the defendant acted intentionally with the purpose of injuring the plaintiff's expectancy." *Id.* (cleaned up).

The entirety of Allen's support for her tortious interference claim is this: "[o]n January 23, 2023, after being terminated, Defendant Casper wrongfully interfered with Plaintiff's potential settlement communications by contacting or representing himself as Plaintiff's attorney in

communications concerning settlement." (Dkt. 13, ¶ 31); (*see also id.*, ¶¶ 17-18). There are no allegations in the record showing a plausible business expectation or settlement negotiations. The record shows that by end of August 2022, there was no chance of settlement. (*Ford II*, Dkt. 51) ("The Parties do not believe a settlement conference would be productive at this time."). Allen provides no allegations that Casper "acted intentionally with the purpose of injuring the plaintiff's expectancy." *Younge*, 2025 IL App (2d) 240354, ¶ 20. While Allen claims to have had "active settlement negotiations," "draft settlement agreements," and "[e]vidence" that "Ford wrote Casper into the settlement" in her *opposition* (Dkt. 26 at 5), no such allegations are in her *complaint*. "A plaintiff may not supplement or amend [her] complaint by presenting new facts or theories in [her] briefing in opposition to a motion to dismiss." *Bondick v. Ricoh Imaging Americas Corp.*, 2022 WL 2116664, at *5 (N.D. Ill. June 13, 2022) (quotes omitted) (citing *Bissessur v. Indiana University Bd. Of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009)); *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). Allen's claim lacks merit and warrants dismissal. *Younge*, 2025 IL App (2d) 240354, ¶ 21 (affirming dismissal "because [Plaintiff] pleaded no facts showing that [Defendant] specifically intended to derail his prospective promotion" and so "the trial court properly dismissed [Plaintiff's] claim of tortious interference with a prospective economic advantage").

## IV. Emotional Distress

Defendants contend that the Court should dismiss Allen's claim for emotional distress because she fails to allege conduct severe enough to pass muster under Illinois law. Defendants point out that "Allen's claimed damages of 'humiliation' and 'anxiety' are exactly the kind of emotional injuries that fall short of the level of severity required to state a claim for intentional infliction of emotional district." (Dkt. 23 at 15). Allen counters by providing four bullet points that she alleged "severe anxiety," "emotional distress upon discovery claims were removed," "distress

from being forced into trial unprepared," and that "[n]o medical evidence is requires at pleading stage." (Dkt. 26 at 6).

A claim for "intentional infliction of emotional distress require[s] the following elements: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew there was high probability that her conduct would cause it, and (3) the defendant's conduct caused severe emotional distress." *Burnette v. Burnette*, 2025 IL App (1st) 241380-U, ¶ 16. "To be extreme and outrageous, the conduct must go beyond mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, and exceed all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up).

The entirety of Allen support for her IIED claim is that Casper's conduct of "concealing his disciplinary history, mishandling the litigation, and interfering after termination" were "extreme and outrageous and exceeded all bounds of professional conduct" and that this "conduct caused Plaintiff severe emotional anguish, humiliation, and anxiety, interfering with her personal and professional life." (Dkt. 13, ¶¶ 36-37). Allen's allegations come nowhere close to what is required to plausibly allege IIED. "A case for intentional infliction of emotional distress requires conduct going beyond mere insults or threats, or even malicious intent; the distress must be so severe *that no reasonable man could be expected to endure it.*" *Orloff v. Supervalu Inc.*, 2016 IL App (1st) 152371-U, ¶ 15 (quotes omitted) (emphasis added); *Littledale v. Sima*, 2024 IL App (2d) 220177-U, ¶ 60 ("Although defendant's alleged conduct may have caused plaintiff some distress and embarrassment, it was not extreme and outrageous enough to satisfy the requirements of an intentional infliction of emotional distress claim under Illinois law."); *Kunz v. Deitch*, 1988 WL 74392, at *5 (N.D. Ill. July 12, 1988) (holding that the "pain, sorrow, emotional and mental

distress" Plaintiff suffered failed rise to the level of severity required to state a claim). Allen's arguments rehash her skeletal pleadings and make up facts that she was "forced into trial unprepared." Allen failed to "plead and prove the first element of a claim for the intentional infliction of emotional distress"; the Court therefore "need not address the sufficiency of the remaining elements." *Ma v. U.S. Bank, Nat'l Ass'n*, 2023 IL App (1st) 221556-U, ¶ 51 (affirming dismissal even where alleged conduct was "so stressful that [Plaintiff] manifested physical problems that she said included a humiliating and depressing bout of facial eczema").

## V.    Remaining Arguments

The Court addresses Allen's remaining arguments in a separate section as it is unclear which counts or arguments they relate to. Allen presented a section indicating that Defendants raise improper factual disputes. (Dkt. 26 at 6-9). The discussion veers far from a relevant or cogent response and instead delves into series of incoherent and false statements.

First, Allen claims that her IIED claim had "survived years of litigation and multiple rounds of motions to dismiss before Defendant unilaterally stripped them without consent." (*Id.* at 6). There is nothing accurate about this statement. Allen's IIED claim was dismissed *before* it even got to *Ford II* and there were no motions to dismiss filed in *Ford II*. (*See Ford II*, Dkts. 1, 3, 116).

Second, Allen claims that she plausibly alleged damages—citing to a self-created "expert report" presented for the first time in her opposition summarily concluding that she is entitled to millions of dollars in relief and that "the Court must accept these allegations as true." (Dkt. 26 at 7). These are not allegations. "A plaintiff may not supplement or amend [her] complaint by presenting new facts or theories in [her] briefing in opposition to a motion to dismiss." *Bondick*, 2022 WL 2116664, at *5 (quotes omitted).

19

Third, Allen repeatedly references and makes arguments about a "lien." (*See, e.g.*, Dkt. 26 at 4, 5, 7). Defendants raised no arguments concerning liens. (Dkt. 23). There are no lien issues in this litigation. None of Allen's contentions regarding liens are relevant.

Finally, Allen states that "Defendant refused to depose essential witnesses, abandoned discovery, and created a deficient record that led directly to the adverse judgment against Plaintiff." (Dkt. 26 at 9). To support this, Allen relies on "Governmental Interinsurance Exchange v. Judge, 221 Ill. App. 3d 586 (1991)" where Allen states that there, "the court held that failing to pursue available discovery or develop the evidentiary record can establish breach of duty and proximate cause in a malpractice action." (*Id.*) Therefore, Allen states that "[u]nder Judge, these allegations more than sufficiently plead malpractice and causation." (*Id.*) This is the second time Allen submitted a fake case to this Court. There is no "Governmental Interinsurance Exchange v. Judge" case. A search for "221 Ill. App. 3d 586" brings up an entirely different criminal case *People v. Blake*. There is little doubt that Allen's 112-page opposition to Defendants' motion to dismiss was generated by AI. (Dkt. 26 at 9); (*see also id.* at 48-59, 82-85) (AI generated content). Allen submitted two fake cases and repeatedly inaccurate and false statements wholly bereft of support in the record—no doubt because of overreliance on AI.

The Court is "[m]indful that pro se pleadings are held to less exacting standards than those prepared by counsel and are to be liberally construed." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). But as Allen surely knows—having been sanctioned for engaging in frivolous and malicious conduct—"*Pro se* status does not shelter plaintiffs from sanctions pursuant to Rule 11." *Eberhardt v. Vill. of Tinley Park*, 2022 WL 22896754, at *2 (N.D. Ill. Aug. 18, 2022) (citing *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990)); (*Ford I*, Dkt. 704) ("Allen has repeatedly engaged in litigation misconduct as Judge Rowland concluded and this court agrees,

20

'willful abuse of the litigation process,' . . . by persisting in pursuing frivolous allegations, even after being sanctioned for them"). When a self-represented party files a document in federal court, that party is certifying to the court that the legal contentions contained in it "are warranted by existing law." Fed. R. Civ. P. 11(b). "Carelessness, good faith, or ignorance are not an excuse for submitting materials that do not comply with Rule 11." *Attaway v. Illinois Dep't of Corr.*, 2025 WL 1101398, at *2 (S.D. Ill. Apr. 14, 2025). Allen must ensure that the case citations and representations she presents to the court are accurate and are supported by valid precedent; the fact that she is representing herself does not relieve her of that duty.

Filing a document that contains citations to nonexistent cases, quotes language that comes from no real case, or that contains arguments wholly unsupported by the record violates Rule 11. Allen did just that. This demonstrates that Allen failed to make a reasonable inquiry into the supporting law or facts. This wastes both the parties' and the Court's time attempting to locate nonexistent cases and unpack made up factual assertions. The Court sanctions Allen $1,500 for filing false cases and arguments to the Court in violation of Rule 11. *See, e.g. Seth Cameron Virgil v. Experian Information Solutions Inc, et al.*, 2026 WL 401066, at *5 (S.D. Ind. Feb. 12, 2026) (recommending $10,000 sanction for submitting a brief with hallucinated cases); *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, 2025 WL 1511211 (S.D. Ind. May 28, 2025) (imposing $6,000 sanctions for briefs containing hallucinated citations); *Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr.*, 2025 WL 2502308 (S.D. Ind. Sept. 2, 2025) (recommending $7,500 sanction for a brief containing hallucinated citations).

21

## **CONCLUSION**

Defendants' Motion to Dismiss is granted with prejudice. (Dkt. 22). Allen shall pay $1,500

to the Clerk of the Court for violating Rule 11 of the Federal Rules of Civil Procedure.


_____
Virginia M. Kendall
United States District Judge

Date: March 10, 2026